

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**RECEIVED**

NOV 08 2007 *aew*
NOV 08 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Don Campbell

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

07CV6337
JUDGE FILIP
MAGISTRATE JUDGE NOLAN

vs.

Case No: _____
(To be supplied by the Clerk of this Court)

Judge Catherine Haberkorn,
Michael Fitzgerald, Deputy
Sheriff, Unknown Named Lady (possibly Picante)
Deputy Sheriff, Phyllis Yaeger, Court Reporter,
Abraham Centeno, Clerk, Mr. Duma, S.O.R.T. Sheriff
Police, David Sevic, Sheriff Police

(Enter above the full name of ALL
defendants in this action. **Do not
use "et al."**)

**CHECK ONE ONLY:**

— Imminent Danger —

☑ _____ COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code (state, county, or municipal defendants)

_____ COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code (federal defendants)

☑ _____ OTHER (cite statute, if known) Emergency Preliminary Injunction
and 18 U.S. Code 241 and 242

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I.   **Plaintiff(s):**

Revised: 7/20/05

## Defendants:

Defendant: Phyllis Yaeger, C
Title: Court Reporter
Place of Employment: 2650 S. California Ave Chicago, IL 60608

Defendant: Abraham Centendo
Title: Clerk of Court Cook County
Place of Employment: 2650 S. California Ave Chicago, IL 60608

Defendant: MR. Duma
Title: Sort Sheriff's Police gang Intelligent's unit
Place of Employment: 2650 S. California Ave Chicago, IL 60608

Defendant: David Sevic
Title: Sheriff Police
Place of Employment: 2650 S. California Ave Chicago, IL 60608

A. Name: Don Campbell

B. List all aliases: Donald Lee

C. Prisoner identification number: 20070033595

D. Place of present confinement: Cook County Jail

E. Address: P.O. Box 089002 Chicago IL 60608

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**

(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in B and C.)

A. Defendant: Catherine Haberkorn

Title: Judge Skokie Court House

Place of Employment: 5600 Old Orchard Rd Skokie IL 60077

B. Defendant: Michael Fitzgerald

Title: Deputy Sheriff Skokie Court House

Place of Employment: 5600 Old Orchard Rd Skokie IL 60077

C. Defendant: Unknown Named Italian Lady (Picante)

Title: Deputy Sheriff Skokie Court House

Place of Employment: 5600 Old Orchard Rd Skokie IL 60077

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised: 7/20/05

III.   **Exhaustion of Administrative Remedies**

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A.   Is there a grievance procedure available at your institution?

YES (X)   NO ( )   If there is no grievance procedure, skip to F.

B.   Have you filed a grievance concerning the facts in this complaint?

YES (X)   NO ( )

C.   If your answer is **YES**:

1.   What steps did you take? I Sent a Complaint to the United States Attorney 219 S. Dearborn Chicago Fl 60604

2.   What was the result? No Response / I Also filed a 1st And 2nd Step Grievance At the Jail About Sheriffs Police Duma And David Sevic, it was Denied

3.   If the grievance was not resolved to your satisfaction, did you appeal? What was the result (if there was no procedure for appeal, so state.) there is No Appeal, this is Not a Jail Situation for Any Kind of Abuse or Mistreatment in Custody.

D.   If your answer is **NO**, explain why not: You Can Not file a Grievance against a Judge And Deputy Sheriffs who Don't Work at the Jail



3



E.    Is the grievance procedure now completed?    YES ( )   NO ( )

F.    If there is no grievance procedure in the institution, did you complain to authorities?   YES (X)   NO (X) you Can not file a Grievance against a Judge in the Jail.

G.    If your answer is YES:

1.    What steps did you take? I filed two Motion's for Substitution of Judge for Cause one on 7-10-07 And the 2nd on 9-12-07

2.    What was the result? The sitting supervizeing Judge John Moran, Skokie court House Denied Both Motion's

H.    If your answer is NO, explain why not: you Can Not file a Grievance against a Judge in the Jail.

4

Revised: 7/20/05

**IV.** **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):**

A.  Name of case and docket number: *92-C-3265*

B.  Approximate date of filing lawsuit: *MAy, 1992*

C.  List all plaintiffs (if you had co-plaintiffs), including any aliases: *Don Campbell A-K-A Don Lee*

D.  List all defendants: *Howard Peters III Et al*

E.  Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): *U.S. District Court N.D. Ill.*

F.  Name of judge to whom case was assigned: *Ann C. Williams*

G.  Basic claim made: *8th Amendment Excessive Custody*

H.  Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): *Won Jury Verdict $126.000 Reversed on Appeal*

I.  Approximate date of disposition: *July, 2001*

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

(5) *Campbell Vs. Human Resource Developement Inst. Et al Case No: 06-CV-0887   U.S. Dist Ct. N.D. Ill.*

(3) *Campbell Vs. Sheahan, Et al   Case No# 06-C-5387 U.S. District Court N.D. Ill.*

V.    **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe precisely how each
defendant is involved. Include also the names of other persons involved, dates, and places.
**Do not give any legal arguments or cite any cases or statutes.** If you intend to allege
a number of related claims, number and set forth each claim in a separate paragraph. (Use
as much space as you need. Attach extra sheets if necessary.)

1. IN CASE 07-CR-10564 This is a Case where
State Court Cook County Judge Catherine Haberkorn sitting in a
Skokie Court house is Denieing Don Campbell (hereinafter) Campbell
his Basic Fair trial Rights And is not An Impartial Adjudicator
And is so Biased And Prejudice Against Campbell that Judge
Haberkorn, At Every Hearing 7-10-07, 8-27-07, 9-13-07, 9-17-07
And 10-17-07 Attempted to Retaliate against Campbell for
his Complaints Alledgeing Misconduct And Unfair Practices against
Her And Judge Challenges in substitution of Judge for Cause
Motions in Case's 03-CR-10361 And 04-CR-20466, Case's
that Concluded March 21, 2007. Judge Haberkorn is Also so out
of Control And so Prejudice Against Campbell's Demand for speedy
trial And Decision to go Pro-Se. that IN CASE Number# 07-CR-10564
starting on 7-10-07 Judge Haberkorn Began useing Her
Intelligents, Her And Skill to Block Campbell from a speedy trial
Began Attempting to prolong the Proceedings unfairly, Began
useing Manipulation, trickery, then out Right lieing, And
when this Did Not Work, Judge Haberkorn Began yelling
At Campbell Pointing Her Finger at Campbell Cutting

6

Campbell off at the very point of proof of his arguments And when Campbell points it out Judge Haberkorn began threatening Campbell with Contempt of Court, telling him to shut up, Calling him liars, Cutting off the Court Reporter from Reporting the proceedings with secret signals Calls Campbell's Case last Every Court date, never wears a Judges Robe, And generally demonstrates a dislike, inability to Converse With Campbell, frowns, makes faces mean faces, Refused to Allow the pro. se. Campbell a private Investigator to interview witnesses, obtain Photographs of the Crime scene, Addresses And Identitys of other witnesses And Refused to Allow Campbell a Stand By Counsel to Assist in this Area.

2. Facts Relating to All Counts: On May 5, 2007 Campbell Was Arrested At 8708 W. Thomas Chicago, Illinois And charged With Criminal Trespassing But on 5-8-07 Charged With 2 Counts of Robbery On 6-4-07 Indicted On 2 Counts Robbery, Burglary And Aggravated Battery, Campbell's Case 07-CR-40564 Was Illegally Assigned to Skokie Court house By Design to Judge Sullivan And on 7-2-07 Campbell substituted her, And on 7-10-07 Campbell Appeared in front of the New Judge Haberkorn
         — EXTRA - SPACE needed see Attachment —

VI.    Relief:

7

| Documents | Pages |
|---|---|
| July 10, 2007 transcript | 36 |
| September 17, 2007 transcript | 26 |
| May 11, 2007 transcript | 9 |
| September 14, 2007 Emergency Motion for Investigation w/ Exhibit (1) – (6) | 20 |
| August 22, 2007 Letter From Perry Myers Investigator | 1 |
| Detainee Grievance And 2nd Step Grievance | 4 |

Note: The Civil Rights Complaint is Numbered in the upper Right hand Corner (1) – (26) And The Exhibit's Are Numbered in the upper Right hand Corner (27) – (122)

who first threatened Campbell saying he faced over 95 years in prison, when Campbell pointed out that he wanted to go pro-se. and was demanding a speedy trial, Judge Haberkorn said she wanted a written motion, Campbell requested the court pass the case so he could prepare the Motion in 5 minutes And the Judge Agreed, passed the case, when Campbell was lead to the Holding Cell's, Judge Haberkorn told Bailiff Deputy Sheriff's Michael Fitzpatrick And MS. Abrusso NOT to give Campbell a pen or paper to prepare the Motion, Secretly. The Judge didn't recall Campbell's case until some 7 hours later at the End of the Day Last. And stealthyly Asked Campbell well Did you write the Motion, when Judge Haberkorn learned that Campbell Had obtained a ink pen from a inmate in the Holding Cell And prepared the Motion she began yelling And yelled At the Deputy Sheriff's Also for Allowing Campbell to get a ink pen.

Also At the 7-10-07 Judge Haberkorn told Campbell that He could Not Demand a speedy trial that there was No Discovery or Answer filed so Campbell gave the Court His Supreme Court Rule 413 Discovery, the Judge then said you can't Demand trial or I will Call a Jury in Right Now, you won't get Any Discovery period if you Demand trial, the Judge yelled And frowned And pointed telling Campbell this. At this point Campbell filed an S.O.J. for Cause. The case was sent to Judge John Moran, 7-13-07 who ordered transcripts then on 7-30-07 Denied the S.O.J. for Cause motion And Returned the case to Judge Haberkorn without Giving A Reason for the Denial of the Motion.

However on 7-27-07 Judge John Moran Did order the States Attorney to turn over the Discovery, where police Report's were Given to Campbell But the Alleged Line up Photo's were withheld Along with the Crime scene photo's And the 911 tape, And photo's of the Battery victim.

3.
At the 7-31-07 Hearing Judge Haberkorn out Right Refused to Give Campbell the 6-4-07 transcript where Campbell was told By Branch 42 Judge Debonni that the State had Received An Indictment, But ordered all other Branch Court 42 transcripts 5-8-07, 5-11-07 And 5-30-07, Then ordered the state to Release the 911 tape to Campbell, And though Campbell was Demanding a speedy trial Continued the Case until August 27-2007 At the July 31, 2007 Hearing Judge Haberkorn Also Refused to Allow Campbell a Private Investigator.
   Campbell Returned to the County Jail, played the Released 911 C.D. on a C.D. player And it was Blank, Absolutely Nothing on it. At the 8-27-07 Court date with 48 Days Lost to his speedy trial told Judge Haberkorn about the Blank C.D. Disk, The Judge took the C.D. Disk with the States Attorney Mr. Albanesse Returned Campbell to the Bull Pen, And Returned 15 Minutes Later Called Campbell Back to the Court Room, Now Both the Judge And the State Claim that the C.D. Disk Could only Be played By a Computer, And Judge Haberkorn Had Michael Fitzpatrick, deputy Sheriff play the 911 tape In open Court For Every one, one time on his LAB top Computer. The State And Court Knew all along that

the 911 C.D. Could only Be Played on a Computer, yet useing this ploy to block Campbell's speedy trial the Court then wrote a Further Order For Jailer's to Allow Campbell use of a Computer, such orders the Court Knew would Be Ignored.

She Refused to Solve Campbell's problem's By simply Appointing Campbell a private investigator or Stand By Counsel, all of this Judges order's were designed to Compound problem's And her Action's were taken with a Hope that Campbell would act out or Become unprofessional

4. Judge Haberkorn then said that they had the 5-30-07 transcript And the 5-11-07 transcript's needed for trial, But since But since they had no copy's For Campbell And only the Court's copy's Campbell had to get a New Court date to have them copied, But when Campbell said he might want to File a suppression Motion then Immediately upon ruling proceed to trial the same Day, Judge Haberkorn said that would have to Be a Bench trial And only then Directed the state to Copy the 5-11-07 transcript And Release it, But Refused to Give Campbell the 5-30-07 transcript. Then told Campbell that the Grand Jury transcri -pt would Not Be Ready For at least 90 days, Because of County Budget Cut's.

At the 8-27-07 Hearing Judge Haberkorn Assisted the States Attorney Rick Albanese in the Attempt to Mislead, trick And suppress Exculpatory Police Report's From Campbell, when the State Released a Completely Fabricated photo lineup Stating Campbell was Identified By two customer's Molina

Page 11   Case 1:07-cv-06337   Document 1   Filed 11/08/2007   Page 13 of 125   (13.)

Attachment to Lawsuit

AND MARECEK, only, AND that the Battery Victim Kostreva who was the 911 Caller, AND the only person who gave a Discription of the Culprit, AND witnessed two seperate Show ups without Identifieying Campbell, was never Shown ANY Photographs of Campbell OR asked to Identify Campbell in ANY way. Judge HaberKoen said there were No Such Reports to Impeech them at trial, Here since Kostreva Did Not Identify Campbell The State is suppressing (Hideing) her statements, AND if they don't Call her As a witness how then Could She Be Impeached? They told Campbell there was No Crime Scene photograph's, of property OR Victim, yet Campbell Has Report's showing Inventory numbers For them.

5.

Defendant Timothy D. Bennett, At the States Request prepared a Fabrication of the Grand Jury Indictment Hearing transcript, By Falsifieing AND Altering the testimony Given, the Date of the Hearing And it Doesn't say who Identified Campbell, how Campbell was Identified OR when he was Identified. At the 9-13-07 Hearing the Grand Jury Indictment transcript was Given to Campbell it was Prepared 6-20-07 And Claimed the Hearing was 5-30-07, Campbell told Judge HaberKoen that on 5-30-07 Judge Deboni at Branch Court 42 said there was No indictment, AND the Indictment was Announced on 6-4-07 At Branch Court 42 Before Judge Deboni, Remember at the 7-31-07 Hearing Judge HaberKoen Strongly Refused to order the 5-30-07 Branch Court transcript, Claiming it had No Value, As if Anticipating it would Be a MAJOR Factor later. Then 9-13-07 Judge HaberKoen said there is No Branch Court 5-30-07 transcript that this

transcript Did Not Exist, But only After the State announced in open Court that the Grand Jury transcript was there, And now the Grand Jury transcript Says Campbell was Indicted on 5-30-07.

Judge Haberkorn now Claims she was, superceded By Indictment May 30th 2007 And Judge Deboni announced it. Then the Judge Began to Mind Read And Cut Campbell's Arguments off saying I Can tell what you are About to Say, Don't tell me your Cross Examination. When Campbell tryed to ask to at least Let Him Make a Record, Judge Haberkorn Cut Campbell off and said Do it tommorow, I Can't deal with your Rambling, I Have a HeadAche From you. And she Ended the Hearing.

6.

Campbell Appeared in Court 9-14-07 But Judge Haberkorn was Not Present, Judge Moran Refused to Allow Campbell to File his 2nd S.O.J. For Cause And said it had to be Filed Before Judge Haberkorn, And sent the Case Back to Judge Haberkorn For 9-17-07. The State Alerted Judge Haberkorn that Campbell Attempted to File An S.O.J. For Cause. At the 9-17-07 Hearing Judge Haberkorn acknowledge the Branch Court 42 May 30, 2007 transcript, then simply Changes her Mind And Says it doesn't Exist, when Campbell pointed out that Both She And the State had Previously Admitted that there was a Branch 42 5-30-07 transcript, And that on 8-27-07 they Claimed to Have it

Attachments to Law Suit

Judge Haberkorn Called Campbell a liar 3 times, got on the telephone Called the Court Reporter Jeanne Hollinsworth the Court Reporter supervisor And tryed to Convince her to agree that there were No Branch Court 42 5-30-07 transcript.

After hanging up the telephone The Judge Attempted to trick And manipulate Campbell into forgetting About the 5-30-07 Branch Court transcript, By untruthfully saying the Court Reporter Just told her on the phone that No 5-30-07 Branch Court transcript EXisted.

Campbell pointed out that on the Certified statement of Conviction /Disposition Print out of His Case 07-CR-10564 And it show's Campbell WAS superceded By Indictment on 6-4-07 the Indictment WAS filed WITH the Clerk on 6-7-07 and it show's Branch Court 42 Hearing's on 5-11-07, 5-30-07 And 6-4-07, Judge Haberkorn then Attempted to Play Confused And Not Know what a Certified statement of Conviction And Disposition print out WAS, yelling at Campbell saying you are not Convicted.

The Judge took Campbell's Argument off Record with a silent signal with out alerting Campbell And Began yelling, pointing her finger, frowning And Calling Campbell liar, trying to Bate Campbell into Actions she Could use to Discredit His Pro-se. status.

Campbell fearing a Conspiracy to Convict Him with the Judge

Cooperateing With the State, Campbell then Filed And Emergency Motion For Inuestigation of the Skokie States Attorney's office By the united States Attorney.

Judge Haberkorn told Campbell to Argue the Motion, And At Every Step She Cut Campbell off, told Campbell he was Making a False Record, when In Reality Euery thing Campbell said was Accurate And the truth.

At Euery Stage Judge Haberkorn Attempted to Mistate And Confuse the proceedings.

Then Began yelling Again, And Greatly EXASgerateing Saying Campbell was Repeating himself 10 4imes And Campbell was Cut off And the Judge Immediately Began to Denie the Motion Saying NO witnesses OR Affidavits, when She Knew the Motion was Sworn to under penalty of perjury. And without Euen letting the State Respond the Judge denied the Motion, Her Action's Of Blocking Campbell From a speedy trial Put's him At Looseing ouer 90 Days off of his speedy trial term.

Campbell Next Filed a Substitution of Judge For Cause of Judge's Haberkorn, Moran, OBrien And Sullivan, Attempting to Haue the Case transfered to Chief Judge Biebel For Argument, Hopeing he Would Stop this out of Control Judge Where Campbell Believed No Sitting Skokie Judge Would go against her.

Judge Haberkorn said Campbell Could Not substitute more then one Judge, And against the wording In the Statute transfered the Case to Judge John Moran For a

Hearing on the motion, But then Began threatening Campbell
saying She was gonna start sanctioning Campbell with
Contempt of Court for filing frivolous motions

On 9-19-07 Judge Moran, told Campbell that He was going to Hear
Campbell's S.O.J. For Cause motion Even though He was Named in
the motion, And the statute Clearly States that the motion must
Be transfered to A Judge not Named in the motion.

Judge Moran ordered the 8-27-07, 9-13-07 and 9-17-07
transcripts Continued the Case until 10-5-07, then on
10-5-07 set the Case for Argument on 10-16-07 At the
10-16-07 Hearing Campbell Again objected to Judge Moran
Hearing the motion Because he was Named in the motion
And pointed out That pursuant to Gomez Vs. United States
109 S.Ct. 2237 at 2248 All critical Stages of a trial must
Be held By a person with Jurisdiction to preside.
Judge Moran Still decided he had Jurisdiction to Hear the motion
And After Argument denied the motion And sent the Case
Back to Judge Haberkorn Based on Judge Haberkorn's
Affidavit Denieing the Allegation's in the motion which the
transcripts Clearly Contradict And Judge Haberkorn's
Bailiff Deputy Sheriff Michael Fitzpatrick, who also
wrote An Affidavit For Judge Haberkorn, and on Her
Behalf saying he was present And Judge Haberkorn
never Raised Her voice And never yelled at Campbell,
And that Campbell Continued to Cut the Judge Off At Every

point. Campbell Demanded trial.

7. On 10-17-07 when Campbell appeared before Judge Haberkorn He first learned that Judge Haberkorn was furious with him at the End of the day when she called Campbell's case, she Began yelling, Baking her face up and pointing at Campbell telling Campbell he could not demand trial, that he never filed a 413 discovery, Campbell pointed out He did so on 7-10-07 and had a stamp filed copy, Judge Haberkorn Requested to see it, Next Judge Haberkorn said Campbell never filed a Defendants witness list, Campbell pointed out he did so on 8-27-07 and had a stamp filed copy. She Requested to see it, then said Campbell had to Re-do It, Because It was Blank as to a couple of the witnesses Name's, And Even though she had Refused Campbell a private investigator the Blank witnesses, stoped the Entire witness list, which she had previously Excepted And had agreed to locate the witnesses.

When Campbell attempted Explain this the Judge Began to yell and point her finger at Campbell, when Campbell asked the Judge not to point her finger at him, Judge Haberkorn Became very Inventive And out Right lied And said that Campbell was pointing his finger at the Judge And that she had 7 witnesses to prove it, told Campbell to put his hands Behind his Back. Present in court were two public Defenders ① Bobb Goodman, ② white male P.D. ③ Deputy sheriff Cook, ④ Deputy sheriff Abriosa ⑤ Court Reporter, ⑥ probation officer white female, ⑦ unknown Deputy

Sheriff male.

Judge Haberkorn in an attempt to make Campbell appear to have never been ready for trial, played those stealthy games, then cut the hearing off with a future court date for 10-22-07. Judge Haberkorn knew the alleged facts of Campbell's criminal case from both party's perspective's, she read the transcripts heard the 911 C.D. in open court, Read the 413 Discovery and the 7-10-6, S.O.J. For cause Motion, She also Arraigned Campbell

8. Conspiracy Practices, By Judge Haberkorn, Deputy Sheriff's Fitzpatrick and Picante (who Campbell believes is the unknown named Deputy Sheriff) at the 10-16-07 S.O.J. For cause Hearing before Judge Moran, Picante was Guarding Campbell, and conspired in concert with them to Discredit Campbell sabotage his motion hearing and Evidence By Attempting to manipulate the testimony of Campbell's witnesses and Picante out right lied to Deputy Sheriff's Townsend-Otoole and Hawkeses, Campbell's witnesses, telling them that she heard Campbell tell Judge Moran, that Campbell said they Disrespected him, yelled at him, and threatened him, so they should stay clear of the court room, Because Campbell was trying to call them as witnesses.

This lie was devised to invoke Anger in Campbell's witnesses to give no favorable testimony for Campbell, Picante was Able to Achieve this Because Judge Moran passed Campbell's case for 35 Minutes, and it was during this period that the lies against Campbell was told to his witnesses.

Without the interference of the Conspirer's Campbell's witnesses

would have testified that they heard and saw Judge Haberkorn yell, threaten and point at Campbell, and this would contradict both Judge Haberkorn and Fitzpatrick's affidavits, and these steps were taken to block Campbell from a fair hearing to substitute Judge Haberkorn

9. Defendant Phyllis Yaeger, Court Reporter in Campbell's Criminal Case 07-CR-10564 was Recruited by the State to Falsify and Alter the 5-8-07 T.V. Bond Court hearing transcript, to thwart Campbell's Challenge to his Case Being Illegally Assigned to Skokie Court house in Violation of the General Order No. 2.1 and 1.3 C. where Judge Boyle After finding Probable Cause to detain, ordered Campbell's Case transferred to Branch Court 50, After the Hearing the Clerks Circumvented this Assignment and Changed it to Branch Court 42, then Influenced Phyllis Yaeger to Alter the transcript as to the Branch Court the Case was Assigned and small portion's of the Statements Made By the Presiding States Attorney that Contradict the Case Reports. A Review of the Original Stenographer's Notes and Recording's will prove this.

10. Defendant Abraham Centendo, Clerk Case Assignment's, in Concert with the State unConstitutionally put Campbell's Case in Skokie, Disregard General Order No. 2.1 and 1.3 C did not use the Electronic Data Case Assignment Machine to pick Campbell's Judge, They deliberately put Campbell's Case in Skokie, Apprehended and Returned Campbell's Motions Attempting to Alert the Chief Judge of these unfair Illegal Practices.

11. Defendant's sheriff police gang Intelligence Duma and sheriff's police Defendant David Sevic, learned that Campbell had Returned to the Jail, when on or About May 14, 2007 when Campbell was taken to the Jail's Cermak Health center, EX — gang Intelligent sort officer Canada saw Campbell whom has known Campbell by site from Escort's to Interviews to see office of professional Standards, to see Detectives for New Charges.

When Canada saw Campbell while Driving Campbell to Cermak Health Services, he stated Campbell you can't stay out of Jail huh.

subsequently later that same night 5-14-07 sort officer Duma called Campbell down to Division 11 medical center, like Campbell had to see the Doctor at 7:00 pm, But was Interviewed By Duma, pretending to show Concern about the Chicago Police Injuring Campbell by throwing him out the 2nd floor window and Tasered Almost causing death, saying he Could talk to the Right people About that for Campbell.

Duma left, And on 5-15-07 Came hand cuffed Campbell And took him to Division 14 gang unit office, where Campbell was subjected to An Interrogation By Duma And David Sevic, Campbell Requested An attorney Asked why He was there And Duma said there was No Charges, But he And Chicago Detective David Sevic wanted to talk to Campbell About the police Busting Campbell And how they Could help Campbell

get out of Jail, They said all Campbell was Charged With Was Criminal Trespassing, Campbell told them he was Charged with Robbery.

They then told Campbell that since Campbell helped Hundreds of the gang Members on the Compound with They're Motions, writ's And legal Work on They're Criminal Cases, they wanted Campbell to tell them targeted guy's Personal Business, Even lie About them Admiting to Campbell they Killed someone, Campbell pointed out that he was Not interested in lieing on people, Then Duma showed Campbell several pictures of Individuals his targeted Inmate's And they basicly Explained the facts of They're Case And said we know you know them Because You are From Cabrinie Green's And Because they were locked up Around you in the County Jail.

They said they Could get Campbell out of Jail if Campbell Just said the targeted 1 or 2 inmates told Campbell they Commited the unsolved murder they were Claming he did. Campbell declined to lie And Asked to leave, Campbell Also said he did Not Even personally Know the Alleged targeted Gangster Disciple, David Sevic, then told Campbell to Just tell them about a old Cold Case where the Shooter is Dead saying Campbell was 45 years old And knew alot of stuff, that he had Friend's in the States Attorney's office High up, But as a Kind Justure, He would have Campbell's Case looked into And if No one Identified Campbell they would Make a phone Call And have Campbell Released.

But that Campbell had to stop filing lawsuit's against the

Sheriff's And it would look good if Campbell dropped the Lawsuits And Don't File Any More Complaints.

Campbell then pointed out that he Did Not trust sheriff police Duma, Because in November, 2002 while in Division 2 at the Jail, Campbell was falsely Accused OF Attempted Escape And Sheriff Police questioned Campbell, used the opportunity to question Campbell about the Girlfriend he was Arrested with, And while they Found Escape charges unfounded, They Raided Campbell's sisters House at 6414 N. Ridge Chicago And question the Girlfriends Husband an Arabic Man, And lied to him saying Campbell told them that the Girlfriend Married him for Pay. Plus No Gun's or Illegal Property was Found At Campbell's House.

The Sheriff's police David Sevic said he was going to look into these things get Back to Campbell who would probably Be Released if no Body Identified Campbell.

When Duma was taking Campbell Back to Division 11, he put A Phone number 773-869-6466 in Campbell's shirt pocket, he said Call and he would tell Campbell what David Sevic Found Out About the Witness Not Identified Campbell in Case No: 07-CR-10564,

Subsequently Campbell was Indicted on 6-4-07 And sensing Illegal Interference From Duma And David Sevic Campbell

Began Investigating, And Calling The Clerk Of Court Office In Cook County And Learned that Campbell's Criminal Case was Dismissed Nolle. Pros. on 5-11-07 then Reinstated by Advancement on 5-16-07 And that the Indictment was not filed with the Clerk until 6-7-07.

On or About 6-10-07 Campbell Called the 869-6406 (773) Number And spoke to Duma, who Completely shocked Campbell, Duma said we looked into the Information you gave us and it checked out, And he said something About a murder, Campbell thinking him playing or trying to make false Records to Convince the State that Campbell was Cooperating, Campbell said yeah yeah Right (sarcasticly). Duma then said they were looking into the other Claim But it's to old. Campbell hung up the phone.

After Court on or About 6-27-07 Campbell Wanting Answers to the Bizarre Events in his Criminal Case, Called the 773-869-6406 About possibly speaking to David Sevic, Gang unit officer Sandman, Answered the telephone And told Campbell that Duma was not there But David Sevic was, he put David Sevic on the telephone And Campbell Asked David Sevic, why they used these Games like they were going to help Campbell with his Criminal Case And flipped it around to Cause Harm, David Sevic Responded saying hey Buddy, No you talked to me about a Guy on the Roof In Cabrini Green's Campbell said No about his Crim-inal Case, David Sevic said No I don't talk about

your Case, listen It Don't work like that, I don't Know Any thing About your Case, Campbell Again told him that He Knew All of the facts of Campbell's Criminal Case, David Sevic then said oh Im the wrong person you Never met me, And Re Hung up the phone on Campbell

12. Imminent Danger: Because Campbell Refused to Cooperate with Helping Duma And David Sevic FRAME INCARCERATED GANG Member's And GANG Members In the free world, by Falsifying testimony to help them get they're Cold Case On MURDERS OFF the Ground. Duma, David Sevic useing Cook County Jailer And they're INMATE Connection's Began to Spread Rumours Around the Cook County Jail's Division's 9, 10, 1 And 11 that Campbell Was they're Informant, and useing tactic's like having Division 11 gang unit officer's Call Campbell to they're offices at odd Hour's, Comeing to Campbell's Cell Making odd Statements And harrassing Campbell in a Attempt to Make Campbell Appear to Be An Informant, Putting the prison population under the false Impression that Campbell Was a Stool pigeon INFORMANT, Causeing Many Prisoner's In MAXimum security to fear Because During the 3 years 11 Month's Campbell spent in Cook County Jail from 4-23-03 through 3-23-07 helping them With they're CRIMINAL Case's Hundreds of DANGEROUS InMates, Because Of this false information WANT to StAb or MURDER Campbell Campbell Returned to the Cook County Jail On 5-8-07 Where

Campbell Remains incarcerated, on Criminal Case 07-CR-10564. Campbell Has never been an informant, never cooperated with the police, detectives, State nor federal Government, Here Duma And David Sevic first recruited the States Attorney's office to Advance false charges, built false Evidence And to frame Campbell, keep Campbell in custody illegally so that they could help Duma And Sevic pressure Campbell to cooperate in lieing on Gang members on old or cold case murders, or to force Campbell to plead guilty to get out of the County Jail to save his life, .

Also The Judge Haberkorn's stealthy And Illegal tactic's to block Campbell from recieveing a speedy trial place's Campbell in a Imminent Danger situation Because he is forced to stay under the life threatening situation's at the Jail.

13. These Action's And Conspiracy And Civil Rights Violation's By all Defendant's were the Direct And proximit cause of the Damages the plaintiff Complain's of, And said Action's violate Campbell's Civil Rights under the 1st, 5th, 6th, 8th And 14th Amendment Rights to the United States Constitution And Gives Rise to this Civil Rights Complaint under 42 USC § 1983 And 18 USC § 241 And 242. As well As the Requested Injunctive Relief, Because there is a wall of secrecy in the Skokie designated Chicago Court Rooms where Judge Haberkorn helps Lead And Because of Her Extreme Prejudice Against Campbell And Ability to lie, Campbell Can not have a fair trial Before Her.

## Injunctive Relief

Plaintiff Request Emergency Injunctive Relief, THAT the Federal Court Enjoin Judge Haberkorn from Any Further Participation in the Criminal Case # 07-CR-1054 And Direct the Case Sent Back to the Chief Judge Paul Biebel For Reassig -nment Of Judge on An Emergency Basis. And for Civil Rights Violation Relief under 18 U.S.C. 241 And 242. And that plaintiff Be Removed From the Custody of the Cook County Jail And Rehoused in Another Jail So that the Sheriff's Police Defendant Jailers or Mislead Gang Members Can Not Attack Campbell Based on the Ramours, Lies And False Storys Invented By gang Intelligence Defendants.

## Conclusion

Wherefore:  Plaintiff Campbell Requests Punitive Damages against all Defendants Jointly and severally with the Exception of Judge Haberkorn in the Amount Of Ten Millions Dollars.

And

A Judgment of Compensatory Damages against all Defendants Jointly And severally with the Exception of Judge Haberkorn in the Amount of Ten Million Dollars, Along with Any Other Awards or Penalties this Court May Deem Just And Proper.

Don Campbell, Cook County Jail P.O. Box 089002 Chicago, IL 60608
Don Campbell, I Declare under penalty of Perjury that the foregoing is true And Correct: pursuant to 28 U.S.C. 1746

Dated: October 20th 2007

Short Appendix To Civil Rights Motion

| Documents | Pages |
|---|---|
| July 10, 2007 Transcript | 36 |
| September 17, 2007 Transcript | 26 |
| May 11, 2007 Transcript | 9 |
| September 14, 2007 Emergency Motion For Investigation W/ Exhibit (1) - (6) | 20 |
| August 22, 2007 Letter From Perry Myers Investigator | 1 |
| Detainee Grievance And 2nd step Grievance | 4 |

Note: The Civil Rights Complaint is Numbered in the upper Right Hand Corner (1) - (26) And The Exhibits Are Numbered In the upper Right Hand Corner (27) - (122)



```
 1       STATE OF ILLINOIS )
                          ) SS.
 2       COUNTY OF C O O K )

 3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT -- CRIMINAL DIVISION
 4                        DISTRICT 2

 5       PEOPLE OF THE STATE OF ILLINOIS, )
                                         )
 6                            Plaintiff, )
                                         )
 7                    vs.                ) 07 CR 10564
                                         )
 8       DONALD CAMPBELL,                )
                                         )
 9                            Defendant. )

10              REPORT OF PROCEEDINGS had at the

11       hearing of the above-entitled cause, before the

12       Honorable CATHERINE M. HABERKORN, Judge of said

13       court, on the 10th day of July, A.D., 2007.

14


15              PRESENT:   HON. RICHARD A. DEVINE, State's
                           Attorney of Cook County, by
16                         RICHARD ALBANESE,
                           Assistant State's Attorney,
17                         on behalf of the People;

18                         MR. EDWIN A. BURNETTE, Public
                           Defender of Cook County, by
19                         ANNE DYKES,
                           Assistant Public Defender,
20                         on behalf of the Defendant.

21


22       Ann Marie Payne, CSR, RPR
         Official Court Reporter
23       District 2
         CSR No. 084-001645
24
```

1                          I N D E X

2
          In re:  People v. Donald Campbell, 07 CR 10564
3
          Date of hearing:  7/10/07
4
          Pages:  1 through 36
5

6                                                    PAGE

7         Continuation of proceedings                 35

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1                    P R O C E E D I N G S
 2              THE CLERK:  Donald Campbell, custody.
 3              THE COURT:  Donald Campbell?
 4              THE DEFENDANT:  Yeah.
 5              THE COURT:  Do you have money to hire
 6      a private lawyer.
 7              THE DEFENDANT:  No.  I am requesting
 8      to represent myself.
 9              THE COURT:  My questions is do you
10      have money to hire a private lawyer?
11              THE DEFENDANT:  No, I don't.
12              THE COURT:  Did you file a motion to
13      represent yourself?  I don't see it.  Did you?
14                   Okay.  You need to file a motion
15      asking that you want to represent yourself.
16      How much time do you need for that?
17              THE DEFENDANT:  You could pass the
18      case, and I will file it and be right back out
19      with it.
20                   I will make an oral motion; but
21      if you want it in writing --
22              THE COURT:  Yes, I would like it in
23      writing.  --
24                   THE DEFENDANT:  Pass the case.  I
```

1          will be back in five minutes.

2                    THE COURT:  Pass the case.

3                              (WHEREUPON, the case was

4                               passed and recalled.)

5                    THE CLERK:  Donald Campbell.

6                    MS. DYKES:  For the record, Assistant

7          Public Defender Anne Dykes, stepping up for

8          Robert Goodman on behalf of Mr. Campbell.

9                    THE COURT:  Stepping up for who?

10                    MS. DYKES:  Robert Goodman.

11                    MR. ALBANESE:  Bob Goodman, upstairs.

12                    MS. DYKES:  Mr. Robert Goodman was

13          the Public Defender in Judge Sullivan's room,

14          and he is going to be following this case.

15                    THE COURT:  Okay.

16                    MS. DYKES:  Following the SOJ.

17                    THE COURT:  Okay.  Okay.  Sir, did

18          you say you are going to be asking to represent

19          yourself?

20                    THE DEFENDANT:  That is correct.

21                    THE COURT:  Okay.  You need to go do

22          that back at the jail.

23                    THE DEFENDANT:  I got the motion

24          already.  They told me that you said not to

1         give me an ink pen, but --

2                 THE COURT:  You can't have pens in

3         the lockup.

4                 THE DEFENDANT:  It is people back

5         there with pens.  I wrote the motion up

6         already.

7                 THE COURT:  Who has pens?

8                 THE DEFENDANT:  It is -- I mean,

9         there are ink pen in the back.  Inmates have

10        ink pens so I wrote --

11                THE COURT:  No inmates are supposed

12        to have pens back there.

13                THE DEFENDANT:  Okay.  Well, I got

14        the motion wrote up.

15                THE COURT:  The sheriffs need to find

16        out what is going on back there.  Somebody has

17        a pen and gave it to him in the lockup.  No one

18        is supposed have a pen.

19                THE DEFENDANT:  I would like to file

20        the motion.  I would like to also address the

21        court and say that if it is a problem with me

22        proceeding pro se and I can't receive a fair

23        trial before you --

24                THE COURT:  No one said it is a

```
 1      problem.  I am asking you to follow the rules.

 2      No one said --

 3                  THE DEFENDANT:  I don't have a

 4      problem following the rules.  I am just saying

 5      that --

 6                  THE COURT:  That was the rule.  So

 7      you need to file a motion.  Do you have it to

 8      file?

 9                  THE DEFENDANT:  Yes.

10                  THE COURT:  Can I see that, please?

11      There is no problem with people going pro se.

12      People go pro se all the time.

13                  THE DEFENDANT:  Right, but, if, you

14      know, you and me have a situation.

15                  THE COURT:  No, we don't have a

16      situation.

17                  THE DEFENDANT:  Well, you know, what

18      I am trying to say is all I want to do is have

19      a speedy trial.  I would like to demand a

20      speedy trial.

21                  THE COURT:  Let's proceed on how the

22      rules are, and the first thing is I am going to

23      read this.  And if you will please be quiet

24      while I am reading this, I would appreciate it.
```

1       Excuse me one second.

2                       (WHEREUPON, a brief

3                        pause was taken.)

4               THE COURT:  Okay.  Mr. Campbell,

5       these are your charges, that on May 5th, 2007

6       that you committed the offense of robbery, that

7       you knowingly by the use of force or by

8       threatening the imminent use of force, took

9       property, United States currency, from the

10      person or presence of Adriana Kostreva, a

11      person 60 years of age or older.

12                      Second charge, robbery, that on

13      May 5th, 2007 that you knowingly by the use of

14      force or threatening the imminent use of force

15      took property, a wallet, from the person or

16      presence of Gwendolyn Molina, M-O-L-I-N-A.

17                      Also charged with the offense of

18      burglary, that on May 5th, 2007, you without

19      authority knowingly entered into a building,

20      the property of Adriana Kostreva,

21      K-O-S-T-R-E-V-A, located at 2725 West Division

22      in Chicago, Cook County, Illinois with the

23      intent to commit the offense of theft.

24                      You are also charged with

1        aggravated battery, that on May 5th, 2007 that

2        you knowingly without legal justification by

3        means caused bodily harm to Adriana Kostreva,

4        an individual 60 years of age or older, in

5        which you struck her about the head.

6                     The count of robbery normally is

7        a class -- excuse me, a class two offense.

8        Since it is a person of 60 years of age, then

9        it is a class one offense, normally 4 to 15

10       years in the Illinois Department of Corrections

11       with a two-year mandatory supervised release.

12                     Because of your same or greater

13       class convictions, class two convictions in the

14       past, if you are found guilty of robbery, it is

15       mandatory class X, sentence 6 to 30 years in

16       the Illinois Department of Corrections.

17                     There are two counts of robbery.

18       The one that -- both of them, if you were

19       either to be found guilty of either of those,

20       it would be mandatory class X sentencing.

21                     If you are found guilty of class

22       two or greater offense, that is class X

23       sentencing, 6 to 30 years in the Illinois

24       Department of Corrections.

1              Burglary is also a class two

2    offense.  Possible normally 3 to 7 years in the

3    Illinois Department of Corrections with a

4    two-year mandatory supervised release.

5              Because of your class two

6    convictions in your background, it must be

7    mandatory class X.  If you are found guilty, 6

8    to 30 years in the Illinois Department of

9    Corrections.

10             Aggravated battery is a class

11   three offense.  Possible 2 to 5 years in the

12   Illinois Department of Corrections.

13             However, because you have the

14   same or greater class convictions in the past,

15   you are eligible for extended term.  That would

16   be a double of that, up to 10 years in the

17   Illinois Department of Corrections.

18             If, in fact, it were to be found

19   that these were separate incidences, that

20   separate -- a robbery was separate or the

21   burglary was separate, any one of those

22   offenses were separate from one another,

23   complete acts that were completed and another

24   act that was committed and completed -- which I

1    don't know because I don't know the facts --

2    but if so, you could be sentenced to

3    consecutive terms on certain counts.

4              If one act was completed,

5    committed, completed and another act committed

6    and completed, two separate incidences on the

7    same time, same date, you could get consecutive

8    sentences in this case on the counts.

9              Knowing this information, are

10   you still choosing to represent yourself?

11             THE DEFENDANT:  Yes, I am.

12             THE COURT:  If you are indigent, a

13   Public Defender can be appointed in your case.

14   Do you understand that?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  Are you rejecting the

17   services of the Public Defender's office?

18             THE DEFENDANT:  Yes, I am.

19             THE COURT:  Let me ask you the full

20   question because the Court Reporter can't taken

21   down two people at once.  So if she is still

22   typing my question and you are talking, she

23   can't get it both down.

24             Do you understand that you have

1    the right to hire any attorney of your choice.

2    If you cannot afford an attorney, I will

3    appoint an attorney for you.  Do you understand

4    that right?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  Are you still choosing to

7    waive that right?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  Do you also understand

10   these are some of the things an attorney could

11   do if, in fact, an attorney was representing

12   you:  An attorney could help you read the

13   charges.  An attorney could discuss different

14   possibilities of going to a bench trial or a

15   jury trial.  That is, an attorney could help

16   you interview witnesses.  An attorney would

17   help you prepare any affirmative defenses.  An

18   attorney would help you prepare cross

19   examination of State's witnesses and direct

20   examination of your witnesses.  Do you

21   understand that these are some of the things

22   that an attorney could help you with?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  An attorney could also

1          help you with preparing opening statements and

2          closing arguments.  An attorney could help you

3          waive the possibilities of choosing a

4          conference over a trial and a trial versus a

5          bench trial versus a jury trial.  Do you

6          understand a lawyer could help you with that?

7                    THE DEFENDANT:  Yes, I do.

8                    THE COURT:  Knowing this information,

9          that these are just some of the things that a

10         lawyer could help you with, a lawyer could help

11         discuss the legal possibilities in this case

12         and the law that would be appropriate to that.

13         A lawyer would be someone that has graduated

14         from law school and is licensed to practice law

15         in the State of Illinois.  Do you understand

16         that?

17                   THE DEFENDANT:  Yes, I do.

18                   THE COURT:  What is your age, sir?

19                   THE DEFENDANT:  45.

20                   THE COURT:  And what is your level of

21         completed education?

22                   THE DEFENDANT:  GED.  College

23         classes.  I got --

24                   THE COURT:  Did you say you have your

1   GED?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Where did you obtain your

4   GED?

5              THE DEFENDANT:  Lincoln Community

6   College, and also I have a certificate in

7   business management.  I took college courses in

8   TV college.

9              THE COURT:  In what college?

10             THE DEFENDANT:  TV college.

11             THE COURT:  TV college.  What is TV

12  college?

13             THE DEFENDANT:  TV college is a

14  program that they had in Illinois Department of

15  Corrections in Stateville where they supply

16  grants to the prisoners, and you took courses

17  such as psychology or micro and macro economics

18  and like that.  I took those course and got

19  credits.

20             THE COURT:  Okay, and you do not have

21  a law degree; is that correct?

22             THE DEFENDANT:  I have been

23  practicing law from being --

24             THE COURT:  Do you have a law degree,

1    sir?

2          THE DEFENDANT:  No, I don't.  I don't

3    have any law degree.

4          THE COURT:  I need to ask you these

5    questions in order to see if you can represent

6    yourself.  Do you have a law degree?

7          THE DEFENDANT:  No, I don't.

8          THE COURT:  Do you understand that an

9    attorney that would be appointed for you would

10   have a law degree, would be able to practice

11   law, would be authorized to practice law in the

12   State of Illinois and, in fact, would have

13   tried many cases in the State of Illinois.  Do

14   you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  You are still choosing to

17   represent yourself versus that of a licensed

18   practicing attorney in the State of Illinois?

19         THE DEFENDANT:  Yes, I am.

20         THE COURT:  Okay.  The defendant is

21   allowed to represent himself.  Public

22   Defender's office given leave to withdraw.

23         MS. DYKES:  Thank you, Judge.  I will

24   tender to Mr. Campbell a copy of the

```
 1    indictment.

 2              THE COURT:  Okay.  State will have to

 3    prepare discovery.  Are there staples in there?

 4              MS. DYKES:  Yes.

 5              THE COURT:  There cannot be staples

 6    going to the jail.

 7              MS. DYKES:  My only other question,

 8    Your Honor, is we did subpoena and receive a CD

 9    of the 911 tape, but we only have one.  I am

10    not sure whether the court wants to take

11    custody of that.

12              THE COURT:  Yes.  I need to have

13    copies made.  Thank you.  We need to make

14    copies.  State will have to prepare discovery

15    for the defendant.

16                   And, Defendant, you need to

17    prepare an answer, an answer to discovery to

18    the State as well.

19              THE DEFENDANT:  I would like to

20    address the court, please.

21              THE COURT:  Yes, sir.

22              THE DEFENDANT:  First of all, here is

23    a motion for discovery right here.

24              THE COURT:  Hand it to the sheriff.
```

1            THE DEFENDANT:  I would like to

2      submit the motion for discovery.

3            THE COURT:  Okay.

4            THE DEFENDANT:  And I am also -- I am

5      also making a demand for speedy trial.

6            THE COURT:  Sir, you can't demand

7      until you have your answer.

8            THE DEFENDANT:  I already demanded.

9      I have got an answer right here.  Whatever they

10     do, I am ready to go to trial.

11           THE COURT:  You have to follow the

12     rules of the Supreme Court, which states that

13     you must file an answer, affirmative defense,

14     list of witnesses, dates of birth, addresses,

15     phone numbers and all that.

16           THE DEFENDANT:  It is right there.

17     You can stamp the original to the court and a

18     copy to me and a copy to the state's attorney.

19                     Even though he hasn't tendered

20     me any discovery, I understand he got the

21     opportunity to tender me discovery three days

22     before trial.

23           THE COURT:  If you are demanding

24     right now, you are not getting any discovery.

1            THE DEFENDANT:  For trial, period?

2            THE COURT:  If you are demanding, you

3    are saying you are ready to go, we will load up

4    the jury and you won't have any reports.

5            THE DEFENDANT:  You can give it to me

6    three days before.

7            THE COURT:  No.  I am saying you are

8    demanding today.  So I am going to call in the

9    jurors.  We are going to go and you won't have

10   any police reports.

11           THE DEFENDANT:  Oh, I am demanding

12   trial but --

13           THE COURT:  Did you hear what I just

14   said?

15           THE DEFENDANT:  I heard you, but I am

16   demanding trial.

17           THE COURT:  Okay, fine.  You have no

18   police reports.

19           THE DEFENDANT:  Okay.  If you don't

20   give them to me, that is your choice.

21           THE COURT:  No, it is not my choice.

22   They need to be prepared.  You are answering

23   ready with nothing.

24           THE DEFENDANT:  I --

 1                    THE COURT:  You have no reports.  You

 2          don't have the 911 tape.  You have nothing.

 3                    THE DEFENDANT:  I was arrested.  I

 4          know that I didn't do it.  So therefore --

 5                    THE COURT:  You will not be able to

 6          repeat -- you will not be able to impeach.  You

 7          don't know what is on the police reports.  You

 8          have no discovery and you are answering ready.

 9                    THE DEFENDANT:  The police told me at

10          that police station what --

11                    THE COURT:  Did you hear me, sir?

12          There are legal rules for discovery according

13          to the Supreme Court of Illinois.

14                    THE DEFENDANT:  Well --

15                    THE COURT:  So that means that papers

16          have to be exchanged between the parties.  You

17          are answering ready with nothing; is that

18          correct?

19                    THE DEFENDANT:  Well, I am answering

20          ready --

21                    THE COURT:  With nothing?

22                    THE DEFENDANT:  -- for trial.  You

23          are misunderstanding what I am saying to you,

24          right.  Okay, whatever discovery they have, he

1    can tender to me prior to trial.  He got three

2    days to --

3              THE COURT:  Today you are answering

4    ready, demanding today; is that correct?

5              THE DEFENDANT:  Yes, I am demanding.

6              THE COURT:  So there is nothing being

7    tendered to you.  So we are going ahead, and

8    you have no police reports.  You have don't

9    have the 911 tape.  You have nothing.  So you

10    are demanding with nothing; is that right?

11              THE DEFENDANT:  Prior to trial --

12              THE COURT:  Is that right?

13              THE DEFENDANT:  Prior to trial --

14              THE COURT:  Today you are answering

15    ready today and demanding trial today; is that

16    right?

17              THE DEFENDANT:  That is correct.

18              THE COURT:  Okay.

19              THE DEFENDANT:  And I wish you

20    wouldn't yell at me because it makes me

21    uncomfortable.

22              THE COURT:  Because you are not

23    answering my questions.

24              THE DEFENDANT:  If you yell at me, it

1    makes he uncomfortable and it is --

2              THE COURT:  Sir, it is making me

3    uncomfortable that you keep interrupting while

4    I am talking.

5              So you have to know what the law

6    is.  If you are demanding today, that means you

7    are demanding having no discovery.

8              THE DEFENDANT:  That is correct, and

9    I have --

10             THE COURT:  So you think it is best

11   to proceed to trial without the police reports?

12             THE DEFENDANT:  No.  I was arrested.

13   I understand what I was charged with.

14             THE COURT:  That wasn't my question.

15             THE DEFENDANT:  No, I don't.  I don't

16   think that --

17             THE COURT:  Do you think it is best

18   to proceed and demand trial without police

19   reports?

20             THE DEFENDANT:  No, I do not.

21             THE COURT:  But you are still

22   demanding?

23             THE DEFENDANT:  You have three days.

24             THE COURT:  But you are still

1    demanding?

2              THE DEFENDANT:  You have three days

3    to tender me the police reports prior to the

4    trial.  That is what the rules say.

5              THE COURT:  Not if you are demanding

6    today.  That means the trial is today.

7              THE DEFENDANT:  No, it is almost --

8    the courts are almost closed.  You are not

9    going to pick a jury today.  You are going

10   to --

11             THE COURT:  If you are demanding

12   today, we can pick the jury today.

13             THE DEFENDANT:  No.  We got to

14   subpoena witnesses.  Not only subpoena

15   witnesses, we got to -- we got a whole slew of

16   things to do prior to going to trial.

17             THE COURT:  No.  When you demand, we

18   can put it in there today.

19             THE DEFENDANT:  You can bring the

20   witnesses in today, too?

21             THE COURT:  Yes.

22             THE DEFENDANT:  Even my witnesses?

23             THE COURT:  If are demanding -- no, I

24   am not subpoenaing any of your witnesses

1    because you answered ready.  I have no

2    subpoenas for any of your witnesses.  You don't

3    have anybody here.  So as I said, are you

4    demanding trial with nothing?

5              THE DEFENDANT:  If you yell at me, it

6    makes me uncomfortable.  I don't have any issue

7    with you.

8              THE COURT:  Sir, do you have

9    witnesses here?

10             THE DEFENDANT:  I an have SOJ for

11   cause I would like to file with Judge Biebel

12   against you right now.  I would like to have it

13   tendered to the court.

14             THE COURT:  Sir, how is that possible

15   when you just came in here today?

16             THE DEFENDANT:  I had an issue with

17   you prior to today, and I knew this was

18   probably going to occur.

19                  Now I am going to have a second

20   one prior to this for what is taking place now.

21   You are not going to be fair with me.  What you

22   are doing is yelling at me.

23             THE COURT:  Sir, I am trying to

24   explain to you the law.

1              THE DEFENDANT:  I understand the law.

2              THE COURT:  I want to know --

3              THE DEFENDANT:  I represented myself

4       in Judge Epstein's courtroom.

5              THE COURT:  Do not interrupt me.  Do

6       not interrupt me.  If you interrupt me one more

7       time, you are going to be held in contempt of

8       the court.  I am trying to make sure that you

9       understand that when you demand, you are

10      demanding.  Sir, I would appreciate it if you

11      would look at me when I am talking to you.  Do

12      not turn your back to me in the courtroom.  Do

13      not turn your back to me in the courtroom.

14                     I want to insure that there is a

15      fair trial and that you understand when you

16      demand that means we can pick the jury today.

17      You have no witnesses here.  You have no police

18      reports.  You have no 911 tape, and you are

19      demanding trial; is that correct?

20             THE DEFENDANT:  I am SOJ-ing you for

21      cause right now.

22             THE COURT:  You are not demanding

23      then; is that correct?  SOJ is your motion.  So

24      that means motion defendant.

1          THE DEFENDANT:  So once I file, all

2     proceedings stop and --

3          THE COURT:  Motion defendant.

4          THE DEFENDANT:  -- transferred to

5     Judge Biebel.

6          THE COURT:  Transferred next door to

7     Judge Moran.

8          THE DEFENDANT:  Well, my case --

9          THE COURT:  It is motion defendant.

10          THE DEFENDANT:  My case was

11     transferred to Biebel.

12          THE COURT:  It is not going to be

13     Biebel.

14          THE DEFENDANT:  Because --

15          THE COURT:  That is not what is

16     happening today.

17          THE DEFENDANT:  I submit to Judge

18     Biebel.

19          THE COURT:  It is not for you to

20     decide.  So it is motion defendant for SOJ.  Is

21     that what you are saying?

22          THE DEFENDANT:  Wait a minute.

23          THE COURT:  No demand because it is

24     your motion.

1          THE DEFENDANT:  I demand.

2          THE COURT:  You can't demand and ask

3     for motion on the same day.  It is your motion

4     for SOJ hearing, defendant's motion.  That

5     means there is no term running.

6          THE DEFENDANT:  I have already put my

7     demand --

8          THE COURT:  And it stops as soon as

9     you ask for a motion.

10         THE DEFENDANT:  -- for trial.

11         THE COURT:  And it stops.  When you

12    ask for a motion, it stops.  When you asked for

13    a motion to SOJ Judge Sullivan, your demand

14    stopped.  That was your motion.  When it was

15    transferred here because of your motion, it

16    stopped.  And if you are filing a motion for

17    SOJ today, again then it stops.

18         THE DEFENDANT:  You have a lot of

19    hatred coming from you towards me.

20         THE COURT:  Sir --

21         THE DEFENDANT:  I don't know you

22    other than --

23         THE COURT:  That is exactly right.

24    You don't know me, and you are trying to say

1    that we have a past, but we don't.

2         THE DEFENDANT:  We do have a past.

3         THE COURT:  No.  You just said that I

4    even don't know you.

5         THE DEFENDANT:  I am saying we had a

6    past when my case was called.

7         THE COURT:  Sir, do not tell me about

8    your background because I am not to know any of

9    that before the trial.

10        THE DEFENDANT:  You are yelling.  You

11   are not being -- like you appeared to have a

12   problem with me before I even came in the

13   courtroom.

14        THE COURT:  Sir, I have no problems

15   with you.

16        THE DEFENDANT:  You are yelling.

17        THE COURT:  I do have a problem with

18   you interrupting me every time I am talking.  I

19   am trying to make sure that a fair trial is

20   held here and that you understand the law

21   because you did not go to law school.

22             So I am telling you when you put

23   in a motion for SOJ, the term does not run

24   because that is your motion, a defense motion.

53

1    That is what I am trying to tell you.  I want

2    to make sure that you understand the law.

3              So when you SOJ'd Judge

4    Sullivan, that was motion defendant.  When you

5    went to the chief judge for the SOJ, motion

6    defendant.  When it got transferred here,

7    motion defendant.

8              So today you are saying again

9    you want to hear another motion for cause on

10   me, another judge, that would be your motion.

11   It is motion defendant, meaning a demand does

12   not run.

13             THE DEFENDANT:  What I am saying,

14   Judge Haberkorn, is this, I started out when I

15   came in this courtroom today, I came in the

16   courtroom to proceed pro se.  From the

17   beginning you passed the case and told me, you

18   know, so that I could prepare the motion and

19   then --

20             THE COURT:  And you think that

21   somehow that is prejudicial to you that gave I

22   you time to prepare?

23             THE DEFENDANT:  So you told the

24   jailers not to give me the tools to prepare it,



1        not to let me use a pen.

2                THE COURT:  I said you couldn't have

3        a pen.  We have other instruments.

4                THE DEFENDANT:  They didn't give me a

5        pen or pencil.

6                THE COURT:  Sir, that is my right to

7        proceed as well.  I thought it should be

8        necessary that you properly prepare.  So all I

9        did was pass the case so you can prepare.

10               So now you have come out and you

11       are demanding.  But while you are demanding,

12       you are still asking for a SOJ.  So do you wish

13       to proceed on the SOJ for cause naming myself?

14               THE DEFENDANT:  May I please --

15               THE COURT:  That is the question.

16               THE DEFENDANT:  May I please finish

17       addressing the court?

18               THE COURT:  No.  I am asking you --

19               THE DEFENDANT:  Because if you don't

20       let me address the court --

21               THE COURT:  You need to answer the

22       questions I am asking you.

23               THE DEFENDANT:  But I am saying you

24       told me to be quiet and let you finish talking,

1    and then I did it.  So after you finished

2    talking, I would like to --

3                 THE COURT:  You filed a motion for

4    SOJ to Judge Haberkorn --

5                 THE DEFENDANT:  -- address the court.

6                 THE COURT:  Sir, you cannot just do

7    whatever you want whenever you want.  There are

8    rules of procedure to follow.  Are you wishing

9    to proceed on motion to SOJ Judge Haberkorn?

10                THE DEFENDANT:  As I had indicated,

11   that is not the motion for SOJ of judge

12   Haberkorn.  That is my 4-13 demand for speedy

13   trial.

14                THE COURT:  Are you wishing to

15   proceed on the motion to SOJ Judge Haberkorn?

16                THE DEFENDANT:  Judge Haberkorn --

17                THE COURT:  Sir, that is a yes or no.

18                THE DEFENDANT:  I was trying to --

19                THE COURT:  All I want is a yes or

20   no.  Are you wishing --

21                THE DEFENDANT:  If you yell at me --

22                THE COURT:  I am not yelling, sir.

23                THE DEFENDANT:  You are.

24                THE COURT:  Do not interrupt me.  The

```
1          Court Reporter cannot take us both at the same
2          time.  She cannot.  Are you wishing to proceed
3          on the motion to SOJ Judge Haberkorn?
4                    THE DEFENDANT:  I would like to know
5          by proceeding on the motion to SOJ you, prior
6          to filing that motion, I filed a motion for
7          demand for speedy trial and 4-13, tendering my
8          demand for speedy trial.
9                    THE COURT:  It stops the demand.
10                   THE DEFENDANT:  So you are saying
11         that --
12                   THE COURT:  I am not saying that.
13         The rules and procedures of law say that.  It
14         stops the term from running.  It is your
15         motion.
16                   THE DEFENDANT:  All right.  So you
17         are also saying that based on the fact that I
18         would like to have a speedy trial, I would have
19         to wait.  If he takes six months to give me
20         discovery, so I would have to -- I can't have a
21         speedy trial until six months so --
22                   THE COURT:  Nobody said that, sir.
23         Right now we are talking about SOJ-ing Judge
24         Haberkorn.
```

1          THE DEFENDANT:  I was trying to

2     understand so that I can know if it is possible

3     that we can get past that.  I am trying to

4     understand what is really going on.

5          THE COURT:  My state's attorneys in

6     this courtroom don't take six months to tender

7     discovery.  It will be all provided for you on

8     the next court date.  They do not waste time

9     and people's time and taxpayers' money to take

10    six months to tender discovery.  It will be

11    ready on the next court date.

12          What I want to find out the

13    answer to right now is are you wishing to

14    proceed on the motion to SOJ Judge Haberkorn,

15    which somehow you anticipated before you got

16    here.

17          THE DEFENDANT:  Right.  You haven't

18    read it.

19          THE COURT:  Speaking of prejudicial.

20          THE DEFENDANT:  You haven't read it.

21          THE COURT:  Sir, it is not for me to

22    read.  It is for another judge to read.

23          So are you wishing to proceed on

24    the motion to SOJ Judge Haberkorn?  Sir, what

1     is the answer?

2                THE REPORTER:  Judge, I need to

3     change paper.

4                THE COURT:  Sure.  The Court Reporter

5     is changing paper, so nobody talk on the

6     record.

7                          (WHEREUPON, a brief pause

8                           was taken.)

9                THE COURT:  Sir, are you wishing to

10    proceed on the motion to SOJ Judge Haberkorn?

11               I have allowed you to represent

12    yourself.  Now if you wish --

13               It should be noted for the

14    record the defendant is whispering to the

15    Public Defender and asking advice.

16               THE DEFENDANT:  No, I am not.

17               THE COURT:  The defendant has

18    specifically told me that he does not wish to

19    have the assistance of the Public Defender.  So

20    this Court will not tolerate just asking the

21    Public Defender whenever you want.  The Public

22    Defender is not allowed to give you advice on a

23    case that they don't represent you on.

24               If you want the Public Defender,

1        I will gladly appoint the Public Defender's

2        office to help you; but when you say you want

3        to represent yourself, that is by yourself and

4        yourself alone.  You cannot ask her questions.

5                    THE DEFENDANT:  They do have standby

6        counsel.

7                    THE COURT:  No.  You don't have

8        standby counsel.

9                    THE DEFENDANT:  Even the Public

10       Defender's got assistance now.

11                   THE COURT:  No.  You are not having

12       standby counsel.  You are not being appointed

13       standby counsel.  You are representing yourself

14       as you asked me.  I said, yes, you can.  So you

15       can't just ask them questions whenever you

16       want.

17                   So are you choosing to proceed

18       on the motion to SOJ Judge Haberkorn?

19                   THE DEFENDANT:  I would like to -- I

20       would like to proceed with my motion to SOJ for

21       cause, and I am still making a demand for trial

22       as I can see --

23                   THE COURT:  Demand is not running

24       then on your motion.

1          THE DEFENDANT:  —— I am not being

2     able to have discovery tendered to me because

3     you say that if they —— if I request that

4     speedy trial, then they don't have to give me

5     discovery that they have now.

6          THE COURT:  Sir, I have never said

7     that ever.

8          THE DEFENDANT:  Now today ——

9          THE COURT:  No.  I never said that.

10    I said it is not ready today because the case

11    just got assigned here today.

12          The State needs to make the

13    discovery available to you for the next court

14    date.  Nobody knew what was going to happen

15    today.  We don't prejudge a case.  This is the

16    first day that it came in here, and the State

17    will have it all prepared by the next

18    continuance.

19          But you want to demand today, so

20    there is no discovery to tender you today.  So

21    now you want to proceed on the motion.  That is

22    your motion.  Your demand will not be running

23    during the time that your motion is pending.  I

24    am only stating to you the law.

1          Okay, motion defendant for SOJ

2     Judge Haberkorn for cause.  Transfer to Judge

3     Moran for hearing this Friday -- what is the

4     date?  Friday 13th.  7/13.

5                Okay, you will be before Judge

6     Moran on your SOJ hearing on Friday.

7              THE DEFENDANT:  Would I have to

8     revise the SOJ for cause with the incidents

9     that took place today?

10             THE COURT:  Sir, I am not your

11    lawyer.

12             THE DEFENDANT:  I am not asking you.

13    I am just saying --

14             THE COURT:  I am not allowed to give

15    you legal advice.  It is against the canon of

16    ethics.

17             THE DEFENDANT:  And I would for the

18    record request that my SOJ for cause be

19    transferred to Paul Biebel and not Judge Moran.

20             THE COURT:  You do not get to choose,

21    sir.

22                        (WHEREUPON, the case was

23                        continued to 7/13/07

24                        before Judge John J. Moran.)

1    STATE OF ILLINOIS   )
                         )   SS.
2    COUNTY OF C O O K   )

3

4

5                            I, ANN MARIE PAYNE, Official

6    Shorthand Reporter of the Circuit Court of Cook

7    County, County Department — Criminal Division,

8    District 2, do hereby certify that I reported

9    in shorthand the evidence had in the

10   above—entitled cause and that the foregoing is

11   a true and correct transcript of all the

12   evidence heard.

13

14

15   _____

     Ann Marie Payne
16   CSR NO. 084—001645
     Official Shorthand Reporter
17   Circuit Court of Cook County, District 2
     County Department — Criminal Division
18

19

20

21

22

23

24

1    STATE OF ILLINOIS   )
                          )
2    COUNTY OF C O O K   )

3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
            CRIMINAL DIVISION - SECOND DISTRICT

4

5    THE PEOPLE OF THE          )
     STATE OF ILLINOIS         )
6                           )
7            Plaintiff,     )
                          )
8            vs.             )    No. 07-CR-10564
                          )
9    DONALD CAMPBELL,           )
                          )
10            Defendant.     )

11        REPORT OF PROCEEDINGS of the hearing had

12 before the Honorable JUDGE CATHERINE HABERKORN, on

13 Monday, the 17th day of September, 2007.

14     PRESENT:

15         HONORABLE RICHARD A. DEVINE,
            State's Attorney of Cook County, by:
16         MR. NICK KONDELIS,
            Assistant State's Attorney,
17             on behalf of the Plaintiff;

18

19        The Defendant appearing pro se.

20

21

22

    MADELEINE T. ALAMO, C.S.R.
23   Official Court Reporter
    C.S.R. #084-001599
24   Skokie Courthouse

1      THE CLERK:  Donald Campbell.

2      THE COURT:  Mr. Campbell, are you still choosing to

3  represent yourself?

4      THE DEFENDANT:  Of course.

5      THE COURT:  Of course.

6              State, I know on Thursday, as a matter of

7  fact, I wasn't feeling well and I was off on Friday

8  sick.  So I stopped the hearing on Thursday short of

9  finishing it.  Did you have a chance to go over with

10  Mr. Campbell and see what we are missing?

11      MR. KONDELIS:  Judge, I did.  One of the things I'm

12  going to ask the Court today is to sign a court order to

13  release Mr. Campbell's medical records from Stroger

14  Hospital.

15              Remember, we talked about that,

16  Mr. Campbell?

17      THE DEFENDANT:  Yes.

18      THE COURT:  Since they're not giving you the phone

19  calls to the hospital, the State is trying to

20  accommodate you.  I'm going to sign an order that the

21  hospital release the records to you so then you won't

22  have to worry about the jail giving you special

23  permission to make phone calls since they haven't been

24  doing it anyway.  So, I will sign that order.



1    MR. KONDELIS:  The other things that Mr. Campbell

2   brought to my attention was the Chicago Fire Department

3   ambulance EMT people -- he would like to call those

4   individuals, specifically, the people that took him to

5   Stroger Hospital.

6       THE COURT:  The EMT people?

7       MR. KONDELIS:  Yes.

8       THE COURT:  A/k/a, paramedics?

9       MR. KONDELIS:  Yes.  Judge, I sent out a subpoena to

10  get the ambulance records so I'll know who those people

11  are.  And once I find out who the EMTs were who took

12  Mr. Campbell to Stroger Hospital, I will then disclose

13  those records to him.

14      THE COURT:  Okay.

15      MR. KONDELIS:  And the other thing that Mr. Campbell

16  brought up on Thursday was--

17      THE COURT:  Once we find those persons do you want

18  them subpoenaed here or do you want to read the records

19  first?  Do you want those paramedics subpoenaed to

20  court?

21      THE DEFENDANT:  For trial.

22      THE COURT:  Do you want to talk to them ahead of

23  time or not, or do you just want them on the day of

24  trial?



1    THE DEFENDANT:  For trial.

2    THE COURT:  Okay.

3    MR. KONDELIS:  The other thing that Mr. Campbell

4  brought to my attention was the transcript from the 30th

5  in Branch 42.

6    THE COURT:  Yeah, Rick said he had that.

7    MR. KONDELIS:  Judge, I actually ordered it on

8  Thursday myself.

9    THE COURT:  He said he was looking at it last time.

10  Did you talk to him about it?

11    MR. KONDELIS:  Um, not -- not that particular

12  transcript.

13    THE COURT:  Let me call Nancy one more time.

14    THE DEFENDANT:  We talked about the 6/4 transcript,

15  also.

16    THE COURT:  We already gave you the June 4th

17  transcript.

18    THE DEFENDANT:  You never gave it to me.

19    THE COURT:  Yes, we did.

20    THE DEFENDANT:  You never gave it to me.

21    THE COURT:  That's the one that says Grand Jury

22  Indictment.

23    THE DEFENDANT:  On 9/13 -- On June-- On September

24  13, 2007, when we was here in court, you had indicated

4



1    that the indictment was on 5/30; that they superseded

2    the indictment in court.  And I said they didn't.  And I

3    was trying to explain to you on the record.  You cut the

4    hearing off and said to come back tomorrow.

5         THE COURT:  I gave you the transcript of the

6    indictment.  That's what happened in court that date.

7    He just announced that you were indicted.

8              Do you have anything else, Nick?

9         MR. KONDELIS:  Those are the three.

10        THE DEFENDANT:  They didn't announce that I was--

11   That's not what happened.

12        THE COURT:  That's how it goes.  That's exactly how

13   it goes.

14   .   MR. KONDELIS:  I gave you this on Thursday.

15        THE COURT:  What is that?

16        MR. KONDELIS:  This is the Grand Jury Indictment.

17   You have this.

18        THE DEFENDANT:  Right.  That's the issue.  I got a

19   problem with that.  And that's what I was trying to put

20   on record that I have a problem with that.

21        THE COURT:  That's what happens.  They announce in

22   the branch court before the preliminary hearing judge.

23   He gets notice that you've been indicted.  It's not

24   going to be before him for a preliminary hearing

5



1  anymore.  It's been taken away from him, the

2  jurisdiction, and you're indicted.  That's what

3  happened.  So, a Grand Jury announces that they're

4  indicting you.  And then they tell the State's Attorney

5  in the preliminary hearing court.  They tell the judge

6  and the judge says, "You've been superseded by

7  indictment number," so and so.  So, you're no longer in

8  front of that judge anymore.  He can't do anything else

9  on your case once the Grand Jury took it out of his--

10      THE DEFENDANT:  I understand that.

11      THE COURT:  That's what happened on that day.

12      THE DEFENDANT:  No, it didn't happen on that date,

13  though.  That's what I'm trying to say to you.  You --

14  You -- You have the impression that it took place on

15  that day.  I was actually there.  And I don't want to

16  make an argument about it with you.

17      THE COURT:  What do you possibly think happened that

18  day?  The judge cannot do anything on your case anymore

19  once you've been indicted.

20      THE DEFENDANT:  Um, well--

21      THE COURT:  He cannot.

22      THE DEFENDANT:  I got -- I got -- I got -- I got a

23  couple of motions here I would like to file if it's okay

24  with the Court.



1    THE COURT:  Hold on a second.

2                    What happened on May 30th?  What went on

3    that day?

4        MR. KONDELIS:  Judge, that was the date of the Grand

5    Jury Indictment, Judge.

6        THE COURT:  He already has that.  What did you say

7    you just ordered?

8        MR. KONDELIS:  I ordered the transcript from Branch

9    42.

10       THE COURT:  For what?

11       MR. KONDELIS:  Because you asked me to.

12       THE COURT:  No.  For what?  That's when he was

13   indicted, right?

14       MR. KONDELIS:  He was indicted at 26th Street on

15   that date.

16       THE COURT:  All the judge says is "You're indicted."

17       MR. KONDELIS:  Right.

18       THE DEFENDANT:  Addressing the Court, in the State's

19   Answer to Discovery in paragraph 6, it says that "the

20   evidence that they might be using at trial might be

21   transcripts that they will make available upon request,

22   and all transcripts they indicated from proceedings that

23   took place at any probable cause determinations, branch

24   court, or whatever."  I'm saying that--



1    THE COURT:  There wasn't a probable cause hearing.

2  You were indicted.

3    THE DEFENDANT:  No, I understand.  But prior to me--

4  They -- They said -- What I'm trying to say--

5    THE COURT:  There's no transcripts that you don't

6  have is what I'm saying.

7    THE DEFENDANT:  Yes, there is.

8    THE COURT:  What?  What?

9    THE DEFENDANT:  I do not have--  Well, all you've

10  got to do, if you would sign an order and let me order

11  the transcripts myself and just waive the fees, I can

12  order transcripts without even going through this with

13  you.  You wouldn't even have to be privy to the

14  transcripts that I was ordering.

15    THE COURT:  Great.  Give it to me.

16    MR. KONDELIS:  Judge, I also do have the detective's

17  supplemental report on this case.

18    THE COURT:  Did you make him a copy?

19    MR. KONDELIS:  Yes, I did, Judge.  And I did redact

20  the names and addresses of civilian witnesses.

21    THE DEFENDANT:  I already got this.  This is the

22  same thing he gave me.

23    MR. KONDELIS:  As long as you have it.  I just want

24  to make sure you have everything.



1    THE COURT:  This is all off the record.

2                        (WHEREUPON A CONVERSATION WAS

3                        HAD OFF THE RECORD BETWEEN THE

4                        STATE AND THE DEFENDANT;

5                        AFTERWHICH THE FOLLOWING

6                        OCCURED:)

7    THE COURT:  Mr. Donald Campbell, do you acknowledge

8    that I signed an order for you saying that you don't

9    have to pay for those transcripts?

10    THE DEFENDANT:  Right.

11    THE COURT:  What else?

12    THE DEFENDANT:  Well, um, because--

13    THE COURT:  By the way, I just talked to the

14    supervisor of the court reporters office.  There will be

15    no transcript from May 30th.  This was an administrative

16    process that's done.  That means the administration

17    substitutes the misdemeanor case from the municipal

18    number to a Grand Jury number, a felony CR number.  And

19    that's what happens when it's indicted.  So nothing is

20    said in the courtroom.  There will be no transcript.

21    THE DEFENDANT:  No.  No.  What I'm saying is that

22    you've got a misunderstanding about it.  We had a whole

23    court hearing.

24    THE COURT:  Well, you can do whatever you want.  You



1   can order whatever transcripts you want.  And I said

2   that they're free.  So you go about it your own way and

3   find them.

4       THE DEFENDANT:  Right.  But--

5       THE COURT:  Nothing more needs to be said about it.

6   I already signed an order saying--

7       THE DEFENDANT:  Right.  I understand.

8       THE COURT:  So don't talk about the transcripts

9   anymore.  I signed an order saying that you can have

10  whatever transcripts you want and it's paid for.

11      THE DEFENDANT:  But you just had a conversation with

12  the court reporter and in some kind of way now she's

13  saying that it don't exist.  But when we was here on May

14  30th, Mr. Albanese -- I mean, excuse me--

15      THE COURT:  We were not here on May 30th.

16      THE DEFENDANT:  Excuse me.  When we were here in

17  court--

18      THE COURT:  He made a misstatement.  Because the

19  State's Attorney, his partner, said he doesn't have it.

20      THE DEFENDANT:  On the 27th he testified -- he

21  said--

22      THE COURT:  Mr. Campbell, did you hear me say we do

23  not have to have a discussion about transcripts again?

24  I gave you an order saying you can order whatever



1    transcripts you want, and they're payable -- the charge

2    goes to this Court.  So you get them free.  So order

3    away.  Whatever you want.  Next?

4        THE DEFENDANT:  All right.

5        MR. KONDELIS:  Judge, Mr. Campbell has tendered to

6    me two motions here--

7        THE DEFENDANT:  Wait.  Wait.  Let me address my

8    motions.  I was just making you aware of them.

9        MR. KONDELIS:  Okay.  That's fine.

10       THE DEFENDANT:  First, I have -- I got -- You got --

11   You got the originals.  Can I see them?

12       THE COURT:  Don't be mumbling all kinds of nonsense.

13   Just state what goes on the record.  She doesn't have to

14   take down all your personal thoughts.

15       THE DEFENDANT:  No, I'm not trying to do that.

16   First, I would like to actually file a motion right

17   here.  I want you to give it to her.

18       THE COURT:  You ask.  You ask.  You don't order

19   people around.  You say, "Will you please do this."

20       THE DEFENDANT:  The original goes to the judge, and

21   one copy -- Um, could you hear me?  One copy for Mister

22   Nick, and one copy for me.

23       THE COURT:  Okay.  "Emergency motion for

24   investigation of the Skokie State's Attorneys Office by



1    the United States Attorney General."  You don't have any

2    free time and you have free time.  Okay.  Argue it.  Go

3    ahead.

4         THE DEFENDANT:  The issue here is that, um, on

5    8/27/07 when I was in court here, Mr. Albanese indicated

6    that he had the transcripts for the May 30th and May

7    11th court dates at Branch Court 42.  You indicated that

8    I couldn't have them because there was not copies.  And

9    then I indicated that I was--

10        THE COURT:  I did not say that.

11        THE DEFENDANT:  All right.

12        THE COURT:  And don't misstate what I said.  I did

13   not say you can't have them because they're not copies.

14   I never said that.

15        THE DEFENDANT:  That's what--

16        THE COURT:  I never said that.

17        THE DEFENDANT:  That's what I understood you to say.

18        THE COURT:  Well, I didn't say that.

19        THE DEFENDANT:  And if there's a transcript, we can

20   review it.  I'm not trying to argue with you.  I'm just

21   trying to make a record.  All I want to do, Judge--

22        THE COURT:  Well, make a clear record.  Because

23   that's a false record.

24        THE DEFENDANT:  Well, that's all I want to do.



1    THE COURT:  Don't make a false record.

2    THE DEFENDANT:  That's how I interpreted--

3    THE COURT:  Well, it's false.

4    THE DEFENDANT:  --the conversation to happen.

5    THE COURT:  It's false.

6    THE DEFENDANT:  So, at that time, after I indicated

7    that I wanted to, um, I would like to, actually,

8    probably file a motion to attack the identification; and

9    that I would at least need the 5/11/2007 transcript, you

10   actually told them to release -- you actually told them

11   to copy the 5/11/2007 branch court transcript; and that

12   I would be able to get the 5/30/2007 transcript when we

13   returned to court on 9/13.

14   THE COURT:  There is no transcript for 5/30.

15   THE DEFENDANT:  Well, we had a hearing for a long

16   time.  I mean, I had Jarnel Konda, the Public Defender

17   from Branch Court 42.  He was present.

18   THE COURT:  You never had a hearing.  There was not

19   a preliminary hearing.  You did not have a hearing.

20   It's a preliminary hearing court.  You did not have a

21   preliminary hearing.  You were indicted by the Grand

22   Jury.  You can't do both.  The State's not allowed to do

23   both.  So they indicted you through the process of the

24   Grand Jury which is at 26th and California.  There was

1    no preliminary hearing.  So you are misstating things.

2         THE DEFENDANT:  No, ma'am.  I'm not saying a

3    preliminary hearing.  At that time, it's questionable

4    whether the Grand Jury indicted me on May 30th.  That's

5    my position.  But we had a pretrial hearing there -- I

6    mean, a pre-indictment hearing at that time.  I was not

7    actually indicted or a preliminary hearing.  Because if

8    such indictment had existed, they did not know about it

9    at the branch court before Judge DeBoni.  So, at that

10   time we had a hearing.  At that particular time I had a

11   lengthy conversation with the judge and the judge

12   ordered the State on 5/30/2007 to indicate to them how

13   much time they had left to indict me.  The State said

14   they had until June 13th to indict me.  I indicated that

15   I was arrested on May 5th, 2007.  And that they only had

16   until June 4, 2007, to indict me.

17              And Judge DeBoni said, "If you do not have

18   an indictment in this court by June 4th, I'm going to

19   continue this case until June 4th, and if you do not

20   have an indictment in this court by June 4th I am

21   dismissing this case, Ms. Davis."  The State's

22   Attorney -- the Assistant State's Attorney, Ms. Davis,

23   said, "Well, it won't be over."  He said, "Well, it will

24   be over in this court right here."

1    THE COURT: That's right. Because as soon as you're

2    indicted it goes away from there. That's exactly what I

3    tried to explain to you already.

4    THE DEFENDANT: We talked about -- We talked about

5    it in depth again. And then the proceedings was

6    continued. The proceedings was continued from May 30th

7    until June 4th, 2007. When I appeared in court on June

8    4th, 2007, the Assistant State's Attorney -- me being

9    represented by the Public Defender, Jarnel Konda, and

10   the Assistant State's Attorney Ms. Davis indicated that

11   they had an indictment; that they had obtained an

12   indictment that day, and they gave an indictment number,

13   and an indictment sheet from the Public Defender's

14   office to me on June 4th. And that was the day they

15   said I was indicted.

16            I subsequently, here, at this court on

17   June -- on September 13, 2007, in court here, was told

18   that I was indicted then on May 30th, 2007. And at that

19   time I was given a copy of the Grand Jury indictment

20   transcript. After reviewing the Grand Jury indictment

21   transcript, I actually saw on the transcript that they

22   said on May 30th that that was the day they appeared

23   before the Grand Jury. However, I had a certified

24   statement of convictions disposition which was given to



1   me by the Court here on August 27th--

2       THE COURT:  Statement of convictions?  What's that?

3       THE DEFENDANT:  It was a certified statement of

4   convictions disposition.  It's the printout--

5       THE COURT:  It's not convictions.  That just shows

6   the status of what's happened on the case.

7       THE DEFENDANT:  Right.  I understand that.

8       THE COURT:  You haven't been convicted yet on this

9   case.

10      THE DEFENDANT:  It says on there.

11      THE COURT:  It's the court activities that I had the

12  clerk print out for you.  I was here.  I know what it

13  is.

14      THE DEFENDANT:  Okay.

15      THE COURT:  What about it?

16      THE DEFENDANT:  It says "Certified statement of

17  convictions and dispositions."  That's what it says.

18  I'm just reading what it says.

19      THE COURT:  Mr. Campbell, you don't have to keep

20  repeating things over and over and over and over and

21  over and over and over and over.  How do you like me to

22  keep saying the same things over and over and over and

23  over?  You don't have to keep repeating everything.  I

24  know what the paper is.  Get to the point.

(79)

1      THE DEFENDANT:  So, um, after -- after reviewing

2  this paper, I actually determined that the State -- the

3  State's Attorneys office actually sought an indictment

4  on 6-4-07, and that I was actually -- they indicated I

5  was actually superseded by indictment on 6-4-07; and

6  that they filed it with the Clerk's office, the

7  indictment, on 6-7-07.  So, when -- when I see the

8  actual transcript that indicates that an indictment took

9  place on May 30th, 2007, it's inconsistent with the

10  paperwork.  And so I actually got questions about that

11  in the transcript.  Because not only do I find the

12  transcript not appropriate, it don't even indicate --

13  it's certain things in the transcript it don't indicate

14  how I was identified, who identified me.  And I think

15  that that actually, uh--

16      THE COURT:  That goes on at a preliminary hearing,

17  not a Grand Jury indictment.

18      THE DEFENDANT:  No, no, I'm saying -- No, I'm saying

19  the indictment is faulty.  It's not -- and I think it

20  wasn't like that at first.  I think that it was actually

21  because the State's Attorney's Office have their own --

22  they got their own court reporters that in some way the

23  reason why I was not given the Grand Jury transcript for

24  the lengthy period of time that it took for them to

1    release it to me was because it was altered.  Because

2    on -- it was actually supposed to have been printed on

3    6/20/2007.  And we appeared in this courtroom on several

4    court dates and State's Attorney, Mr. Albanese,

5    indicated that no Grand Jury transcript was available;

6    that it would be three months or more.

7        THE COURT:  Sir, the reason the Grand Jury

8    transcripts are behind is not because there's some big

9    conspiracy to keep them away from you.  There have been

10   budget cuts since you have been incarcerated.  The

11   budget cuts required that numerous personnel in the

12   Grand Jury have been laid off.  I am waiting for Grand

13   Jury transcripts on every single case that I have in

14   this courtroom where there's been an indictment.

15             There is no conspiracy concerning you

16   personally.  It's a plan in the Cook County government

17   to make more money and to save money by cutting back the

18   amount of reporters that they have for the Grand Jury.

19   That's why all the Grand Jury transcripts are delayed,

20   not just your case.  Every case in Cook County that has

21   been indicted is waiting for Grand Jury transcripts.

22       THE DEFENDANT:  You appear to misunderstand me.  And

23   I'm not trying to make--

24       THE COURT:  There is no conspiracy happening to your



1    case.

2    THE DEFENDANT:  Now, I understand that it might make

3    you angry, but--

4    THE COURT:  No, it's not making me angry.  And you

5    can try to put all those words in my mouth and put

6    everything that you want in the transcript.  That's

7    false.  I am not angry.  I want to get to the point.  I

8    want you to stop talking about things that are not

9    relevant to this case.

10    There is no conspiracy to keep a Grand

11    Jury transcript from your hands.  As soon as I got it I

12    tendered it to you.  That's when everybody got it.

13    Because there are budget cuts.  Because the Grand Jury

14    is behind in turning out the transcripts.

15    So, what is the relief that you are asking

16    for, sir?

17    THE DEFENDANT:  The actual transcript.

18    THE COURT:  No.  The relief that you are asking for

19    in this motion.  You're asking me to have the Attorney

20    General's Office investigate the State's Attorneys

21    Office?

22    THE DEFENDANT:  I am -- I am definitely asking for

23    the United States Attorney General's Office to

24    investigate because these, um, these, um -- I think



```
 1   these are falsifying of documents, I think altering of

 2   documents.  I think that, um, that things are being

 3   suppressed from me, information.  And I think that here

 4   an investigation is warranted, you know, because like I

 5   said, this is not--

 6       THE COURT:  Don't tell it to me again.  Don't tell

 7   me again.

 8       THE DEFENDANT:  No, no.  I mean, if you're not going

 9   to let me argue my motion then--

10       THE COURT:  You can argue it, not ten times, only

11   once.

12       THE DEFENDANT:  Please don't yell at me.  If you

13   yell at me then--

14       THE COURT:  Then listen to me.  Why don't you listen

15   to me?

16       THE DEFENDANT:  I -- I heard you.

17       THE COURT:  Okay.  I've heard your argument.  Is

18   there anything new?

19       THE DEFENDANT:  Yeah.  I mean--

20       THE COURT:  New.  New.

21       THE DEFENDANT:  --I'm not finished arguing.  How can

22   I get anything across to you if you yell at me?

23    .  THE COURT:  For some reason you think I need to

24   listen to it ten times, but I don't.  So only go to the
```

83

1    new things.  Don't talk to me anymore about your

2    thoughts.  What is something new that you need to argue?

3        THE DEFENDANT:  You got my -- you got my -- you got

4    the motion.  I mean, if you don't want me to talk.

5        THE COURT:  I don't want you to repeat.

6        THE DEFENDANT:  If I'm gonna be yelled at then you

7    can just read the motion and then I won't say anything.

8        THE COURT:  Okay.  In your motion you're asking me

9    to investigate the State's Attorneys Office by the

10   Attorney General's Office.  There are no affidavits.

11   There's no independent witnesses.

12       THE DEFENDANT:  They're sworn to.

13       THE COURT:  I'm talking I thought.

14       THE DEFENDANT:  But I signed it under oath.  So it's

15   an affidavit.

16       THE COURT:  It's an affidavit with no proof.  These

17   are only merely allegations from you.  And they're

18   ridiculous allegations.

19       THE DEFENDANT:  But I got proof.  I got proof.  I

20   got the actual -- the certified statement of convictions

21   disposition sheet and the transcript which is both of

22   record.  I received both from the--

23       THE COURT:  Did I ask you to respond yet again?  I

24   thought I was talking.  Very softly.  Am I not talking

21



1  softly to you now?

2      THE DEFENDANT:  You are now.

3      THE COURT:  Yes.  So, would you stop interrupting me

4  now?

5      THE DEFENDANT:  Yes.

6      THE COURT:  I have told you this is not a

7  conspiracy.  You do not understand the criminal system

8  procedurally.  You don't have a full knowledge of it.

9  But that's your problem because you chose to represent

10  yourself.

11              When something is -- The State can choose

12  whether or not they want to go by a preliminary hearing

13  or a Grand Jury indictment.  It is set for a future

14  date.  And in the meantime the State can indict you.  It

15  doesn't have to be on that specific date.  It can be any

16  time in between.  And then by the time it gets to the

17  clerk's computer it is a day or two or three after the

18  indictment.  The clerk's office does not sit in the

19  Grand Jury room.  It's a closed hearing with the Grand

20  Jurors and the persons presiding over the hearing.  The

21  clerk's office is not sitting in there and putting it on

22  the computer.  They wait until after the indictments are

23  generated and then it is placed in the computer.

24              And then when the transcripts are



1    prepared, as quickly as possible with the budget

2    concerns that there are now, and as I've explained to

3    you time and time again, that no one is trying to keep

4    them from you, but they have been laid off.  So, as soon

5    as the transcript was made available I made that

6    available to you.  So, there are no grounds of which I

7    see at this time to have the United States Attorney

8    General investigate the State's Attorney's Office.

9    Denied.

10        THE DEFENDANT:  How do you know that--

11        THE COURT:  It's denied.

12        THE DEFENDANT:  All right.  Okay.

13        THE DEFENDANT:  I have a second motion right here.

14        THE COURT:  Of course.  May I have the second

15   motion, please?

16        A SHERIFF:  Yes.

17        THE DEFENDANT:  Can I have them stamped, please?

18        THE COURT:  Of course.

19        THE DEFENDANT:  There are two copies.  The original

20   goes to the Judge.

21        THE COURT:  By the way, everybody knows their jobs.

22   You don't need to tell her the original goes to the

23   Judge.

24             Okay.  This is Defendant's Pro Se Motion

1    for Substitution for Cause for Judges Haberkorn, Moran,

2    O'Brien, and Sullivan.  Well, you can only name for

3    cause the judge that has your case, and that would be

4    Judge Haberkorn.  You cannot name the judges that don't

5    have your case.  So, again, are you trying to have a

6    substitution for cause for Judge Haberkorn?

7        THE DEFENDANT:  Yes, I am.

8        THE COURT:  Okay.  It will go back before Judge

9    Moran again.  And soon you will have to be concerned

10   about the fact if you are filing frivolous motions that

11   you will be charged with sanctions for contempt of

12   court.

13       THE DEFENDANT:  Yeah, you want to put me in contempt

14   of court for filing motions now?

15       THE COURT:  Is that what I just said?  I said

16   frivolous.

17       THE DEFENDANT:  You're yelling at me--

18       THE COURT:  Look up the word frivolous.

19       THE DEFENDANT:  --and you're telling me I'm filing

20   frivolous--

21       THE COURT:  I am not yelling at you.

22       THE DEFENDANT:  Everything in there--

23       THE COURT:  I am talking very softly.  Do not talk

24   when I am talking because then you won't be able to hear



1   me because I'm whispering to you.  I said frivolous.  Go

2   look up the word.  Frivolous.  I did not say motions.  I

3   said frivolous motions.  So perhaps you should go look

4   it up tonight.

5        THE DEFENDANT:  You're saying it with an attitude,

6   though.

7        THE COURT:  You don't know what attitude is.  And

8   you don't know me to say if I'm speaking with an

9   attitude or not.

10       THE DEFENDANT:  But you--

11       THE COURT:  So I am respectfully requesting that you

12  do not tell me what I'm thinking of, of what my attitude

13  is, because you don't know me enough to say it.  So keep

14  your thoughts to yourself.

15       THE DEFENDANT:  No, I'm just--

16       THE COURT:  To yourself.

17       THE DEFENDANT:  No, I'm just saying--

18       THE COURT:  Keep your thoughts to yourself.  SOJ

19  Haberkorn.  So you don't have any room to talk anymore.

20  We're done here.

21                   Transfer to Judge Moran for a hearing

22  Wednesday, September 19th.  Goodbye.

23                           (The above-entitled cause was

24                           continued to September 19, 2007.)



1  STATE OF ILLINOIS   )
                       )   SS:
2  COUNTY OF C O O K   )

3

4

5          I, MADELEINE T. ALAMO, Official Court

6  Reporter of the Circuit Court of Cook County, Cook

7  Judicial Circuit of Illinois, do hereby certify that I

8  reported in shorthand, to the best of my ability, the

9  proceedings had at the hearing of the above-entitled

10 cause; that I thereafter transcribed into typewriting

11 the above entitled Report of Proceedings, which I hereby

12 certify to be a true and accurate transcript of the

13 proceedings had before the Honorable CATHERINE

14 HABERKORN, Judge of said court.

15

16

17          _Madeleine T. Alamo_____

18          Official Court Reporter
            C.S.R. #084-001599

19

20

21

22

23 Dated this 2nd day

24 of October, 2007.

1   STATE OF ILLINOIS )
                      ) ss:
2   COUNTY OF C O O K )

3              IN THE CIRCUIT COURT OF COOK COUNTY
              COUNTY DEPARTMENT - COUNTY DIVISION
4              FIRST MUNICIPAL DISTRICT
   THE PEOPLE OF THE    )
5   STATE OF ILLINOIS,    )
                      )
6      vs.           )   Case No. 07 MC1 11919001
                      )
7   DONALD CAMPBELL,     )
                      )
8         Defendant.   )

9

10            REPORT OF PROCEEDINGS had in the

11   above-entitled cause, taken before the

12   HONORABLE FRANK DEBONI, Judge of said court,

13   on Friday, May 11, 2007.

14

   APPEARANCES:
15              HONORABLE RICHARD A. DEVINE,
              State's Attorney of Cook County, by:
16              MS. BARB DAVIS,
              Assistant State's Attorney,
17              on behalf of the People.

18              MR. EDWIN A. BURNETTE,
              Public Defender of Cook County, by:
19              MR. JARNAIL KANDA,
              Assistant Public Defender,
20              on behalf of the Defendant.
   MS. JOSEFINA ROSAS
21   Official Court Reporter
   69 West Washington - 900
22   Chicago, Illinois 60602
   License # 084003348
23

24

1



 1      THE CLERK:  Donald Campbell.

 2      MS. DAVIS:  We are asking for a date for direct.

 3  We are asking for an order a lineup be held.  There was

 4  no lineup.

 5      THE COURT:  That's not my concern.

 6      MS. DAVIS:  If you will order it.

 7      THE COURT:  I will not order it.  Way out of my

 8  jurisdiction today.  He has already been charged.

 9      MS. DAVIS:  The reason --

10      THE COURT:  That's post charging.

11      MS. DAVIS:  He refused the lineup.

12      THE COURT:  That's his right.

13      MS. DAVIS:  No, it isn't.

14      THE COURT:  I will not order.  That's a hearing

15  that will have to be held.  He has a right to refuse

16  until the Judge orders him.

17      MS. DAVIS:  And he be held in contempt with no

18  bail.  Our victim is here and not in the court just in

19  case there's a lineup.  We want the record to show the

20  victim is not sitting in the court.

21      THE COURT:  You can't hold a lineup.

22      MS. DAVIS:  We are asking for a date for direct.

23      THE COURT:  Off the record.

24

2

1                          (WHEREUPON, discussions were had

2                          off the record.)

3       THE COURT:  We can enter and continue the request

4  for a lineup.  Unless you are ready to argue.

5       MR. KANDA:  Entered and continued.

6       THE COURT:  Well, let's pass until your client

7  gets here.

8                          (WHEREUPON, the case was passed

9                          and recalled.)

10      MS. DAVIS:  We are asking for motion State

11  continuance branch 42 to present the case to the grand

12  jury.

13      THE COURT:  Your name?

14      THE DEFENDANT:  Donald Campbell.

15      THE COURT:  I have appointed the Public Defender.

16  The State is seeking an indictment on your felony

17  charges.  Next court date May 30 in this courtroom at

18  9:00 a.m.  Public Defender will be your lawyer.

19      THE DEFENDANT:  I would like to.  They had already

20  had two kind of show ups with me.  If they want to

21  lineup, I would like to have a lineup.  I didn't do

22  this your Honor.  All this stuff they are saying.  I

23  would like to.  If they have a fair lineup where my

24  Public Defender can stand there and watch them,

3

1          I voluntarily go to any lineup.  I would like

2    that.  If they indict me, they had already.  I was in

3    the ambulance.  They tried to get some people in the

4    police station.  They let someone walk around and look

5    at me.  So if they have some fair situation somebody

6    can come and have a line up.

7          I would like to have that.  I voluntarily.

8          MR. KANDA:  My client told me that on prior

9    occasions, when he was in the ambulance, the police

10   used some improper suggestive procedure.

11         THE COURT:  We don't think that's a fact or not.

12   You can't say without any basis.  You can always file a

13   motion.  It's premature.  You can file a motion to

14   suppress identification.  Right now, you are premature.

15         MS. DAVIS:  This is the defendant we wanted.

16         THE COURT:  He wants to stand in a lineup up.

17   Let's accommodate.  You want to stand in a lineup?

18         MS. DAVIS:  We will write on the file.

19         THE COURT:  Tell the next Judge they will put on

20   the file you want a lineup.  You will stand in the

21   lineup.

22         MR. KANDA:  Whenever there will be, we are his

23   lawyer.  We should be given a notice.

24         THE COURT:  Sure.  You should be given notice.

4



```
 1        MS. DAVIS:  He wants to stand in a lineup.  We

 2   always notify Counsel.  He refused to do it earlier.

 3        THE DEFENDANT:  When they took me to the

 4   ambulance, the people tried to.  I was in the

 5   ambulance.  The police car came with the victim and,

 6   they said this is him.

 7            She didn't identify me.  Then when I got out

 8   of the hospital --

 9        THE COURT:  You don't know what she said?

10        THE DEFENDANT:  I was right there.

11        THE COURT:  You were inside?

12        THE DEFENDANT:  She got out of the car.

13        THE COURT:  She looked in the ambulance?

14        THE DEFENDANT:  Yes, they raised me up.

15        THE COURT:  Did she say you were not the guy?

16        THE DEFENDANT:  That's what I heard her say.

17        MS. DAVIS:  He should have stayed in the lineup.

18        THE DEFENDANT:  Then when I went to the hospital

19   May 6, I got out.  They took me to Harrison and Kedzie

20   Area 4, then they said you are going to a lineup.  I

21   said, I want to call an attorney Demetrius Evans.

22            When I was standing there, the victim whoever

23   he said was the victim walked around with gray hair,

24   looked at me, he said, that's one of the victims.
```

1  There's two more they can identify. She doesn't have

2  to. That's why I said I didn't want to go to the

3  lineup. I don't have a problem with a lawyer

4  representing me.

5         So you see your Honor. I don't want to be

6  stuck sitting in the County Jail for something I didn't

7  do. If that's somebody saying identifying right now.

8  That's what I am asking if they are saying they are

9  identifying me.

10  THE COURT: Apparently, they did. Apparently, you

11  have been identified as the defendant in a criminal act

12  against some other party. The State is confident that

13  victim has identified you and will continue to identify

14  you and can identify you at your trial if you have

15  one. They are confident of that.

16  MS. DAVIS: For the record, we asked earlier to

17  hold a lineup.

18  THE COURT: I know you asked me to sign an order.

19  I had to compel someone who wasn't willing to stand in

20  a lineup. I told you I wasn't going to. The record

21  should be clear on that.

22  MS. DAVIS: We are asking the Court Reporter to

23  give us a copy.

24  MR. KANDA: The police in the passed looked like

1   from the story of my client they used a dangerous

2   suggestive procedure.

3      THE COURT:  That's premature.  You better have

4   some facts.  You can't just make an allegation that's

5   not supported by factual testimony.  I mean you don't

6   know what was on the scene Jarnail.  You weren't

7   there.  I wasn't there.

8         If you want to accept what your client is

9   telling you to make that allegation.  That's dangerous

10   to do.

11      THE DEFENDANT:  That's what happened, your Honor

12   and also.

13      THE COURT:  That's why we have courtrooms a Judge

14   will make the determination.  You will say what you

15   want to say.  They will say what they want to say the

16   State.

17      THE DEFENDANT:  My only question two of them.  If

18   somebody already identified why would they want a line

19   up for me?

20      THE COURT:  They may not have a line up.  You

21   don't have a right to have a lineup.  Number two, the

22   State may choose not to have a lineup number two and

23   number three if they don't choose, there's nothing you

24   can do.

96

1          They have to prove at trial you are the

2    person that committed the trial.  They are confident

3    their witness can identify you as the offender.  Now,

4    whether they can or not, I don't know.  But in the

5    meantime, you will be in custody until you get back

6    here on the 30th of May.

7          MR. KANDA:  Demanding trial.

8                            (Which were all proceedings

9                             had in above said cause.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

8

1   STATE OF ILLINOIS )
                      )
2   COUNTY OF C O O K )

3

4

5

6           I, JOSEFINA ROSAS, do hereby certify

7   that I am an Official Court Reporter for the County of

8   Cook and State of Illinois, and that I reported in

9   shorthand the testimony given at the hearing of said

10  cause, and that the foregoing is a true, correct, and

11  complete transcript of the proceedings had at said

12  hearing.

13

14

15

16

17

18  _____

19

20

21  Dated this 10th day
    of August, 2007.
22

23

24

9

People of the State of Illinois
        Plaintiff

Vs.

Don Campbell
        Defendant

CASE NO: 07-CR-10564

Judge: Catherine Haberkorn

Emergency Motion For Investigation of Skokie States Attorney's office
By The United States Attorney General under 18 U.S.C. 241 and 242

TO: United States Attorney Generals office, Dirks & Federal Bldg 219 S. Dearborn St. Chicago, IL 60604
TO: Patrick Lehey, Chairman, Senate sub Committee Inv. Senate office Bldg Washington, D.C. 20503
TO: Richard Devine, States Attorney 2650 S. California Ave Chicago, IL 60608 11th Floor
TO: Timothy Evans, Chief Judge 50 W. Washington St. Chicago, IL 60603 Suite 2600

Please be Advised that on September 14th 2007 I Filed the original Motion with
Dorothy Brown, Clerk of Court 5600 old orchard Road Skokie, IL 60077 the original
motion n copy served on you by The Pro. Se. Defendant.

## Emergency Motion

Now Comes Your movant Don Campbell (hereinafter) Campbell And
moves this Honorable Court to Grant this Motion Based on the Following
Grounds:
1. The states Attorney's In the Above Case From the start Have Engaged in a
Assorted And Illegal Scheme to Frame Campbell, By Doing investigative work
Assisting Detectives Patrick Finucane And Patricia Sullivan with writting
Fake Police Reports, by sending Detectives frzy Discovery C. Ct. Rule 413 that Campbell
        — Turn over —

files so Detectives Could Change police Reports to Counter Campbells Defense strategy. This MisConduct in public office was Achieved in the following way

① By obstructing Justice, By lieing to the Grand Jury, By Altering the Grand Jury transcript, By Having theyire personal Court Reporters Change the Date, the Grand Jury Hearing was held from 6-4-07 to 5-30-07 As Reported By the Clerk on the Certified Statement of Conviction/Deposition sheet of the Case. By Altering the testimony Given to the Grand Jury By Detective As to the identification of Campbell, Campbell Demands the Court Reporters original tape Recording/original stenographer Timothy D. Bennett, shorthand Court Reporters notes, And Certified Proof of the Date Campbells Case was presented to the Grand Jury.).

② By obstructing Justice by ENGAGEING in a Host of Lie's to the Court And Defendant In a Conspiracy to Block Campbell from Receiveing a Speedy trial And Block Campbell from obtaining EXCULPATORY Evidence on 8-27-07 they Claim to have the 5-30-07 transcript But Claimed it would take 3 or more months to obtain the Indictment Hearing transcript. But at the 9-13-07 Court date the State now said they had the Indictment Hearing transcripts, but now Claim they never Claimed that they had the Branch Court 5-30-07 transcript. And out Right Refused to Released the 6-4-07 BRANCH Court 42 transcript, which made the Branch Court transcripts unavailable And the 9-13-07 Court Judge Falsely Claim that on 5-30-07 the Branch Court anounced that Campbell was Supercceded By Indictment. This is Conspiracy Against Campbell And violates 18 U.S.C. 241 (And unconstituting investigate)

2007CR3595

Von Campbell, Cook County Jail P.O. Box 089002 Chicago, IL 60608
I Declare under penalty of Jury that the foregoing is true And Correct, pursuant to 28 U.S.C. 1746                                      (See: Attached Exhibits)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 001

PEOPLE OF THE STATE OF ILLINOIS

                    VS                    NUMBER 07111919001

        DONALD        CAMPBELL

        CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

    I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County/Local Prosecutor has filed a complaint
with the Clerk of the Circuit Court.

Charging the above named defendant with:

    720-5/21-3-A-2              M        CRIMINAL TRESPASS TO LAND
    720-5/18-1-A               F        ROBBERY
    720-5/31-1-A               M        RESIST/OBSTRUCT - PEACE O
    720-5/18-1-A               F        ROBBERY
The following disposition(s) was/were rendered before the Honorable Judge(s):


05/08/07 PROBABLE CAUSE TO DETAIN
        SLATTERY BOYLE, MAURA
05/08/07 BAIL AMOUNT SET                                        $ 250000
        SCOBG
        SLATTERY BOYLE, MAURA
05/08/07 MOTION STATE - CONTINUANCE -MS        05/11/07 2842
        SLATTERY BOYLE, MAURA
05/08/07 DEF DEMAND FOR TRIAL
        SLATTERY BOYLE, MAURA
05/11/07 NOLLE PROSEQUI                    C001
        DEBONI, FRANK
05/11/07 MOTION STATE - CONTINUANCE -MS        05/30/07 2842
        DEBONI, FRANK
05/11/07 DEF DEMAND FOR TRIAL
        DEBONI, FRANK
05/11/07 NOLLE PROSEQUI                    C003
        DEBONI, FRANK
05/16/07 CASE ADVANCED
        DEBONI, FRANK
05/16/07 CONTINUANCE BY ORDER OF COURT        05/30/07 2842
        ORDER PRESERVING VIDEO RECORDING -GRANTED
        DEBONI, FRANK
05/30/07 MOTION STATE - CONTINUANCE -MS        06/04/07 2842
        CD TENDERED TO ATTY IN OPEN COURT
        DEBONI, FRANK
05/30/07 DEF DEMAND FOR TRIAL
        DEBONI, FRANK

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS        Page 002

PEOPLE OF THE STATE OF ILLINOIS

VS                        NUMBER 07111919001

DONALD      CAMPBELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County/Local Prosecutor has filed a complaint
with the Clerk of the Circuit Court.
06/04/07 SUPERSEDED BY DIRECT INDTMENT       C002
      07CR10564
      DEBONI, FRANK
06/04/07 SUPERSEDED BY DIRECT INDTMENT       C004
      07CR10564
      DEBONI, FRANK
06/04/07 TRANSFERRED TO CRIMINAL DIV              06/20/07 1701
      DEBONI, FRANK
06/04/07 DEF DEMAND FOR TRIAL
      DEBONI, FRANK

.I hereby certify that the foregoing has
been entered of record on the above
captioned case.
Date 08/27/07

_____
              DOROTHY BROWN
CLERK OF THE CIRCUIT COURT OF COOK COUNTY

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS      Page 001

PEOPLE OF THE STATE OF ILLINOIS

VS                        NUMBER 07CR1056401

DONALD      CAMPBELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois,
and keeper of the records and seal thereof do hereby certify that the
electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION
with the Clerk of the Circuit Court.

Charging the above named defendant with:

720-5/18-1(a)                    F      ROBBERY/VIC HANDICAP OR 60+ YR
The following disposition(s) was/were rendered before the Honorable Judge(s):

```
06/07/07 IND/INFO-CLK OFFICE-PRES JUDGE        06/20/07 1701
06/20/07 CASE ASSIGNED                         06/27/07 5703
      BIEBEL, PAUL JR.
06/20/07 DEFENDANT IN CUSTODY                  00/00/00
      GAINER THOMAS V JR.
06/27/07 DEFENDANT IN CUSTODY                  00/00/00
      SULLIVAN, SHARON M.
06/27/07 PRISONER DATA SHEET TO ISSUE          00/00/00
      SULLIVAN, SHARON M.
06/27/07 MOTION TO SUBSTITUTE JUDGE            00/00/00 F        2
      SULLIVAN, SHARON M.
06/27/07 TRANSFERRED TO CRIMINAL DIV           07/02/07 1701
      SULLIVAN, SHARON M.
07/02/07 CASE ASSIGNED                         07/10/07 5701
      GAINER THOMAS V JR.
07/10/07 DEFENDANT IN CUSTODY                  00/00/00
      HABERKORN, CATHERINE M.
07/10/07 PRISONER DATA SHEET TO ISSUE          00/00/00
      HABERKORN, CATHERINE M.
07/10/07 MOTION TO WITHDRAW AS ATTORNEY        00/00/00
      HABERKORN, CATHERINE M.
07/10/07 MOTION DEFT - CONTINUANCE - MD        07/13/07 5702
      TRAN TO JUDGE MORAN FOR SOJ HEARING, ROOM 108
      HABERKORN, CATHERINE M.
07/13/07 DEFENDANT IN CUSTODY                  00/00/00
      MORAN, JOHN J.
07/13/07 PRISONER DATA SHEET TO ISSUE          00/00/00
      MORAN, JOHN J.
07/13/07 MOTION DEFT - CONTINUANCE - MD        07/27/07 5702
      MORAN, JOHN J.
```

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS      Page 002

PEOPLE OF THE STATE OF ILLINOIS

VS                    NUMBER 07CR1056401

DONALD        CAMPBELL

CERTIFIED STATEMENT OF CONVICTION / DISPOSITION

I, DOROTHY BROWN, Clerk of the Circuit Court of Cook County, Illinois, and keeper of the records and seal thereof do hereby certify that the electronic records of the Circuit Court of Cook County show that:

The States Attorney of Cook County filed an INDICTMENT/INFORMATION with the Clerk of the Circuit Court.

| Date | Action | Date 2 | | |
|------|--------|--------|--|--|
| 07/27/07 | SPECIAL ORDER<br>MOT. FOR SOJ ENT. & CONT.<br>MORAN, JOHN J. | 00/00/00 | | |
| 07/27/07 | MOTION DEFT - CONTINUANCE - MD<br>MORAN, JOHN J. | 07/30/07 | | |
| 07/30/07 | DEFENDANT IN CUSTODY<br>MORAN, JOHN J. | 00/00/00 | | |
| 07/30/07 | PRISONER DATA SHEET TO ISSUE<br>MORAN, JOHN J. | 00/00/00 | | |
| 07/30/07 | MOTION S.O.J.-FOR CAUSE-FILED<br>MORAN, JOHN J. | 00/00/00 | D | 4 |
| 07/30/07 | MOTION DEFT - CONTINUANCE - MD<br>MORAN, JOHN J. | 07/31/07 | 5701 | |
| 07/31/07 | DEFENDANT IN CUSTODY<br>HABERKORN, CATHERINE M. | 00/00/00 | | |
| 07/31/07 | PRISONER DATA SHEET TO ISSUE<br>HABERKORN, CATHERINE M. | 00/00/00 | | |
| 07/31/07 | CONTINUANCE BY AGREEMENT<br>HABERKORN, CATHERINE M. | 08/27/07 | | |

I hereby certify that the foregoing has been entered of record on the above captioned case.
Date 08/27/07

_____
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT OF COOK COUNTY

G.J. No.   306
GENERAL NO. 07 CR- 10564

------------------------------

CIRCUIT COURT OF COOK COUNTY
      COUNTY DEPARTMENT
      CRIMINAL DIVISION
        May, 2007
------------------------------

The People of the State of
           Illinois
             v.
      Donald Campbell

     *******************
     * INDICTMENT FOR *
     *******************

ROBBERY, ETC.
------------------------------

            A TRUE BILL
            -----------

Foreman of the Grand Jury

==============================
            WITNESSES
DET. P. FINUCANE

_____
_____
_____
_____
_____
_____
_____
_____
_____

==============================
Filed _____, 20 ___
_____, Clerk
Bail $_____
==============================

**COPY**

FILED

2001 JUN -6 PM 2: 13

CLERK OF THE CIRCUIT COURT
CRIMINAL DIVISION
CLERK
DOROTHY BROWN

1    IN RE:  PEOPLE VS. DONALD CAMPBELL

2

3                      GJ NO. 306

4                      ARR. DATE:  JUNE 20, 2007

5                      07 CR 10564

6

7         BEFORE THE GRAND JURY OF COOK COUNTY,

8                      MAY, 2007

9

10            TRANSCRIPT OF TESTIMONY TAKEN IN THE

11   ABOVE-ENTITLED MATTER ON MAY 30, 2007.

12

13   PRESENT:  MS. MARY PAT DEVEREUX

14                ASSISTANT STATE'S ATTORNEY

15

16   REPORTED BY:  TIMOTHY D. BENNETT

17                 CERTIFIED SHORTHAND REPORTER

18                 ILLINOIS LICENSE NO. 084-002628

19

20   LIST OF WITNESSES:

21   DETECTIVE FINUCANE

22

23

24

1      THE FOREPERSON:  Raise your right-hand,

2  please.

3                          (Witness duly sworn.)

4      MS. DEVEREUX:  This is Grand Jury Number May

5  306.  We are seeking a True Bill against Donald

6  Campbell on charges of robbery, aggravated

7  battery and burglary.  We'd call Detective

8  Finucane.

9          The Grand Jury does have the right to

10  subpoena and question any person against whom the

11  State's Attorney is seeking a Bill of Indictment,

12  or any other person, and to obtain and examine

13  any documents or transcripts relevant to the

14  matter being prosecuted by the State's Attorney.

15                  DETECTIVE FINUCANE,

16  having been first duly sworn, was examined and

17  testified as follows:

18                      EXAMINATION

19                          BY

20                  MS. DEVEREUX:

21      Q.   Detective Finucane, could you please

22  identify yourself for the record?

23      A.   Detective Patrick Finucane,

24  F-I-N-U-C-A-N-E, Star Number 20520, assigned to

1     Area 4 Robbery.

2            Q.    Detective Finucane, were you assigned

3     to help investigate a case of robbery, burglary

4     and aggravated battery, which occurred on May 5,

5     2007 at about 11:50 or so in the morning, at 2708

6     West Thomas, Chicago, Cook County, Illinois?

7            A.    Yes, I was.

8            Q.    Go you have an opportunity to speak

9     with Adrienne Kostreva, Gwendolin Molina and

10    Slawomia --

11           A.    I didn't speak -- I spoke to the first

12    two, not the third.

13           Q.    Did your investigation reveal that

14    there's a dance -- I am sorry.  Did your

15    investigation reveal that there is a dance studio

16    located at 2725 West Division?

17           A.    Yes, ma'am.

18           Q.    Did you learn that Adrienne Kostreva

19    was working at the dance studio on that morning?

20           A.    That's correct.

21           Q.    Did your investigation reveal that

22    Gwendolin Molina had come into that dance studio

23    in order to purchase gift certificates?

24           A.    Yes, ma'am.

1      Q.    Did you learn that other people at the

2  dance studio were there to take yoga and dance

3  lessons?

4      A.    Yes, ma'am.

5      Q.    Did your investigation reveal that

6  while Adrienne Kostreva was speaking with

7  Gwendolin Molina regarding gift certificates,

8  Molina had handed Adrienne Kostreva $200 United

9  States currency?

10      A.    Yes, ma'am.

11      Q.    Did your investigation reveal that at

12  that point Donald Campbell entered into the dance

13  studio without authority?

14      A.    Yes, ma'am.

15      Q.    Did your investigation reveal that he

16  punched Adrienne Kostreva in the face and took

17  the United States currency from her hand?

18      A.    Yes, ma'am.

19      Q.    Then did he shove Gwendolin Molina and

20  take her wallet which contained United States

21  currency?

22      A.    That's correct.

23      Q.    Did he then punch and strike another

24  customer at the dance studio, Leonid Modrytzkj,

1    M-O-D-R-Y-T-Z-K-J, about the face and body?

2         A.    That's not the person he struck.

3         Q.    Would that have been Slawomia Marecik?

4         A.    That's correct.

5         Q.    Did your investigation reveal that at

6    that point Donald Campbell fled the dance studio?

7         A.    Yes, he did.

8         Q.    Were police called and was a physical

9    description given of Donald Campbell?

10        A.    Yes, it was.

11        Q.    Did your investigation reveal that

12   Chicago Police Officers Ronan and Narin observed

13   Donald Campbell fitting the description in the

14   area?

15        A.    That's correct.

16        Q.    Did you learn that as they tried to

17   detain him for an interview, he fled into an

18   abandoned building?

19        A.    Yes, ma'am.

20        Q.    Did the officers pursue him?

21        A.    Yes, they did.

22        Q.    Did Donald Campbell then jump out of a

23   window of the building?

24        A.    Yes, he did.

1          Q.    Was he then detained outside of the

2     building?

3          A.    Yes, he was.

4          Q.    Did your investigation reveal that the

5     officers were able to recover the wallet of

6     Gwendolin Molina in the building?

7          A.    That's correct.

8          Q.    Was that identified by Ms. Molina as

9     her own and as having been taken by force by

10    Donald Campbell?

11         A.    Yes, ma'am.

12         Q.    Did your investigation reveal that

13    because of injuries sustained while jumping from

14    the window, Donald Campbell was taken to receive

15    medical treatment?

16         A.    That's correct.

17         Q.    Did your investigation reveal that

18    United States currency was recovered from his

19    rectum in an amount corresponding to that taken

20    from Adrienne Kostreva?

21         A.    Yes, ma'am.

22         Q.    Did your investigation reveal that

23    Adrienne Kostreva was a person over the age of 60

24    years, being 61 years of age at the time of the

7

1    offense?

2        A.    That's correct.

3        Q.    Was she taken to Rush/St. Luke's

4    Hospital and did she receive medical treatment

5    there for bruising to the side of her face and a

6    black eye?

7        A.    Yes.

8        Q.    Was Donald Campbell identified as the

9    person who had struck Adrienne Kostreva,

10   Gwendolin Molina and Slawomia Marecik and taken

11   United States currency by force from Adrienne

12   Kostreva and a wallet and United States currency

13   from Gwedolin Molina?

14       A.    That's correct.

15       Q.    Had Adrienne Kostreva or anyone else in

16   authority at the dance studio ever give

17   persmission to Donald Campbell to enter into the

18   studio on May 5, 2007?

19       A.    No, ma'am.

20       MS. DEVEREUX:  I have no further questions.

21       THE FOREPERSON:  Are there any questions?

22       JUROR:  How old is Donald Campbell?

23       MS. DEVEREUX:  He was born approximately May

24   20, 1962.

1    THE FOREPERSON:  Are there any other

2    questions?

3                        (No response.)

4                        (Witness excused.)

5                        Whereupon the Grand Jury

6                        was left alone to

7                        deliberate, after which

8                        the following proceedings

9                        were had.

10    THE FOREPERSON:  True Bill.

11                        Whereupon the above-

12                        entitled cause was

13                        continued for arraignment

14                        before the Presiding Judge

15                        of the Criminal Division.

16

17

18

19

20

21

22

23

24

113

1    STATE OF ILLINOIS )

2                      ) SS:

3    COUNTY OF C O O K )

4

5

6           I, TIMOTHY D. BENNETT, a Certified

7    Shorthand Reporter licensed to practice in the

8    State of Illinois, do hereby certify that I

9    reported in shorthand the proceedings had in the

10   hearing of the above entitled cause; that I

11   thereafter caused the foregoing to be transcribed

12   into typewriting, which I hereby certify is a true

13   and accurate transcript of the proceedings had

14   before the Grand Jury of Cook County.

15

16

17                    TIMOTHY D. BENNETT, CSR

18

19

20

21

22

23

24





### State of Illinois
### Circuit Court of Cook County
### Official Court Reporters

Timothy C. Evans
Chief Judge

Marilyn A. Filishio
Administrator

June 28, 2007
In Re: DON CAMPBELL

69 West Washington Street
Suite 900
Chicago, Illinois 60602
(312) 603-8509
Fax: (312) 603-9820
TDD: (312) 603-8539

DON CAMPBELL
No. 20070033595
Cook County Jail
Chicago, IL 60608

Dear Mr. Campbell,

I am in receipt of your letter dated June 5, 2007.   I have contacted the reporters on the

dates you are requesting.  I am unclear what you are requesting on May 8, 2007.  I am

not sure what branch your case was in that day.  If you give me more clarification, I can look

in to that matter for you.

With regards to May 11, 2007 and June 4, 2007, Josefina Rosas is the reporter.  She is

requesting a deposit of $47.25 before she will begin the transcipts.

With regards to the date of May 30, 2007, the reporter, Gina Lynch is requesting a

deposit of $20.00 before she will begin the transcript.

A money order or certified check can be sent to our office at 69 West Washington,

Suite 900 Chicago, IL 60602.  I will forward the deposits to the reporters.

Once our office receives your deposits, we will prepare your transcripts.

Sincerely,

Jeanine M. Hollandsworth, Supervisor
Official Court Reporter's Office

*The MAY 8, 2007 transcript is the T.V. Bond Court Hearing at 26th & California Ave.*



### State of Illinois
### Circuit Court of Cook County
### Official Court Reporters

Timothy C. Evans
Chief Judge

Marilyn A. Filishio
Administrator

69 West Washington Street
Suite 900
Chicago, Illinois 60602
(312) 603-8509
Fax: (312) 603-9820
TDD: (312) 603-8539

July 24, 2007
In Re: DON CAMPBELL

DON CAMPBELL
No. 20070033595
Cook County Jail
Chicago, IL 60608

Dear Mr. Campbell,

I received your letter dated July 14, 2007, where you are requesting free transcripts.

Our office does not provide free transcripts without a court order stating a person is indigent and

that the Court is assuming responsibility for payment of said transcripts.

If you obtain a court order, please send it to our office and we will honor your request.

Without that court order, we would need payment from you before the transcripts will be

prepared.

Sincerely,

Jeanine M. Hollandsworth, Supervisor
Official Court Reporter's Office





## State of Illinois
## Circuit Court of Cook County
## Official Court Reporters

Timothy C. Evans
Chief Judge

Marilyn A. Filishio
Administrator

69 West Washington Stre
Suite 900
Chicago, Illinois 60602
(312) 603-8509
Fax: (312) 603-9820
TDD: (312) 603-8539

September 6, 2007
In Re: DON CAMPBELL

DON CAMPBELL
20070033595
P.O. BOX 089002
CHICAGO, IL 60608

Dear Mr. Campbell:

I received your letter dated August 28, 2007, where you are requesting grand jury

transcripts. Our office does not cover grand jury. The Cook County State's Attorney's

Office has court reporters that handle those cases. You would have to contact their

office in order to obtain the information you are seeking.

Sincerely,

Jeanine M. Hollandsworth, Supervisor
Official Court Reporter's Office





### State of Illinois
### Circuit Court of Cook County
### Official Court Reporters

Timothy C. Evans
Chief Judge

Marilyn A. Filishio
Administrator

69 West Washington Street
Suite 900
Chicago, Illinois 60602
(312) 603-8509
Fax: (312) 603-9820
TDD: (312) 603-8539

September 26, 2007
In Re: DON CAMPBELL

DON CAMPBELL
20070033595
P.O. BOX 089002
CHICAGO, IL 60608

Dear Mr. Campbell:

I received your letter dated September 19, 2007, where you are requesting 10 transcript dates. The dates of 5-30-07 and 6-4-07 are my reporters. The other dates are either 26th Street reporters or Skokie reporters. I have spoken to the supervisors in those two divisions, and I have faxed your request to those supervisors. I am writing to inform you that your request has been processed.

Sincerely,

Jeanine M. Hollandsworth, Supervisor
Official Court Reporter's Office



**DETECTIVE SERVICES**

August 22, 2007

Mr. Don Campbell
#20070033595
P.O. Box 089002, Cook County Jail
Chicago, IL 60608

RE: Investigative Services

Dear Mr. Campbell:

I am writing in reply to your recent letter dated August 12, 2007 for investigative services. In order to initiate this investigation we would need to receive from you $1,000 in cash, credit card, or money order. Please find enclosed form to fill out and return with payment.

Very truly yours,

Perry Myers
President

**Myers Service Inc.**
3221 N. Ashland Avenue, Suite 2W
Chicago, Illinois 60657
IL detective license #117-000206

telephone: 773.404.7400
facsimile: 773.404.4800
email: info@detectiveservices.com
web: www.detectiveservices.com
Professional Investigators Since 1959                    Worldwide Investigations

(119)

Cook County Department of Corrections
Detainee Grievance                    NO: 2007X1506

Don Campbell #20070033595          Dated: June 27, 2007
Division II CC.

**DETAINEE**
**COPY**

Summary of Complaint: The Cook County Jail
Gang unit formerly known as SORT, Mr. Duma And
Sheriff's police David Sevic (unsure of spelling)
had unauthorized Contact with the States Attorney in
my Case, to Request they use upgrading And over Charge
ing false Allegations In An Attempt to Force, Scare or
Manipulate me into taking my legal Knowledge As a Jail
House Lawyer Helping 1000's off Inmates with they're Cases
And Lie to Help them solve Cold Cases on they're
Targeted Individuals, where they supply the details photograph's
And facts, the Sheriff police David was Introduced to
me By Duma As a Chicago police Detective With lots of
Clout, they subsequently told me After I Explained that I
was here on a Framed Robbery With NO Identification that
they Would Speak to the States Attorney to have my Case
Dismissed in 10 to 20 days, If No one Identified
me, But I had to Drop my Lawsuits And Don't write
any More Complaints. I declined to Discuss Any Murders or
Cold Cases With them, And Ignored they're Advice And
filed a Complaint with O.P.S. About the police throwing me
out of the Window, At my Arrest.
I subsequently learned that David Secvic was a Sheriff's
police not Chicago Detective And they Contacted his

DETAINEE
COPY

friend At the states Attorney's office to Convince them to Advance All Kinds of unwarranted Charges against me, to munipulate And force me to go Along with Lies they Make up, they Attempted to make phone and false phone Records on me. Note: I have never Been An Informant or snitch And I never Will, And I Don't Want Any Contact with them as they will serve no purpose But to Cause me to Be Harmed, this was An Attempt to try to take Advantage of me while I was vonerable, Body Broken from being thrown out 2nd fl windos By Police & Charged falsely.

## Action Requested

That All Sheriffs Police And Gang unit officers Be Barred from Contact with me, And Contact with My Court (ASco) Compensation, That No sort, Sheriffs police, Chicago Detective, or Police Be Allowed to have Contact with me without a Court order, That they Be Barred from Any Kind of Retaliation against me, such as Segregation, transfers to More Dangerus Invirorments or Lieing to Innates trying to have me stabed or targeted or to have Inmates write my name in Kites, Allegeing I'm a Gang Leader falsely.

Don Campbell

:R.W. Jackson

:ate:    7-25-07

Note: My Charges were Dismissed 5-11-07 Nolle Pros, they're Contact with the States Attorney Lieing And my filing of the O.P.S. Complaint, Prompted the States Attorney to Reinstate the Charge

I spoke to Lt. HAYES About this And Social Worker Jackson.

(2)

Part – B / Control # _07 X 1506_

## C.C.D.O.C. DETAINEE GRIEVANCE / REFERRAL & RESPONSE

*EMERGENCY GRIEVANCES ARE THOSE INVOLVING AN IMMEDIATE THREAT TO THE WELFARE OR SAFTEY OF A DETAINEE*

Detainee's Last Name: _Campbell_          First Name: _Donald_          ID#: _07-0033595_

Is This Grievance An **Emergency?**     YES ☐          NO ☐

C.R.W.'S Summary Of The Complaint: _Detainee has alleged unprofessional, Coercive, and unethical conduct by Sheriff's Police/Gang Intel. Unit Re: informant Status_

C.R.W. Referred Griev. To: _I. A. D._                    Date Referred: _7/26/07_

Response Statement: _____

_____

### DETAINEE
### COPY

_____

_____

_____

(**print**- name of individual responding to this griev.) - (signature of individual responding to this griev.)  Date: __/__/__  Div./Dept. _____

(**print** - name of Supt. / Designee / Dept. Admin.) - (signature of Supt. / Designee / Dept. Admin.)  Date: __/__/__  Div./Dept. _____

(**print** - name of Prog. Serv. Admin./ Asst. Admin.) (signature of Prog. Serv. Admin./ Asst. Admin.)  Date: __/__/__

Date Detainee Received Response: __/__/__  Detainee Signature: _____

### REQUEST FOR AN APPEAL

*APPEALS MUST BE MADE WITHIN 14 DAYS OF THE DATE THE DETAINEE RECEIVED THE RESPONSE*

*Date Detainee Request For An Appeal:* __/__/__

*Detainee's Basis For An Appeal:* _____

_____

_____

*Appeal Board's Acceptance Of Detainee's Request:*     YES ☐          NO ☐

*Appeal Board's Reasoning / Decision / Recommendation To The Superintendent Or Administrator:*

_____

_____

*Appeal Board's Signatures / Dates:*

_____

Date Detainee Rec.'d the Appl. Bd.'s Response: __/__/__ Detainee Signature: _____

GRIEVANCE CODE(S): (____) (____) (____) (____)

(WHITE COPY – PROG. SERV.)   (YELLOW COPY – C.R.W.)   (PINK COPY – DETAINEE)   (GOLDENROD COPY – DIVISION/SUPT. OFFICE)

Part - B / Control # 07 X 1506
(125)

## C.C.D.O.C.  DETAINEE GRIEVANCE / REFERRAL & RESPONSE

*EMERGENCY GRIEVANCES ARE THOSE INVOLVING AN IMMEDIATE THREAT TO THE WELFARE OR SAFTEY OF A DETAINEE*

Detainee's Last Name: **Campbell**       First Name: **Donald**    ID#: **07-0023595**

Is This Grievance An **Emergency**?    YES ☐       NO ☒

C.R.W.'S Summary Of The Complaint: Detainee has alleged unprofessional, coercive, and unethical conduct by Sheriff's Police/Gang Intel. Unit Re: informant Status

C.R.W. Referred Griev. To: **I.A.D.**            Date Referred: **7/26/07**

Response Statement: Detainee is complaining or concern with his court case. IAD has nothing to do with this grievance. No Misconduct was performed. No IAD case file warranted.

_Dt William Rentas_ _____    _____    Date: 7/27/07  Div./Dept. IAD
(print- name of individual responding to this griev.)    (signature of individual responding to this griev.)

_Tom Snooks_ _____    _____    Date: 7/31/07  Div./Dept. I I
(print - name of Supt. / Designee / Dept. Admin.)    (signature of Supt. / Designee / Dept. Admin.)

_J. Mueller_ _____    _____    Date: 7/31/07
(print - name of Prog. Serv. Admin./ Asst. Admin.)    (signature of Prog. Serv. Admin./ Asst. Admin.)

Date Detainee Received Response: **7/31/07**  Detainee Signature: _Don Campbell_

## REQUEST FOR AN APPEAL

*APPEALS MUST BE MADE WITHIN 14 DAYS OF THE DATE THE DETAINEE RECEIVED THE RESPONSE*

Date Detainee Request For An Appeal: **7/31/07**  Please explain to me, I want why I was contacted by Sheriff's police numerous times, since they have nothing to do with my case, my grievance is a

Detainee's Basis For An Appeal: And if IAD has nothing to do with it who does, I am going to litigate this issue in the highest court

Appeal Board's Acceptance Of Detainee's Request:   YES ☐        NO ☒

Appeal Board's Reasoning / Decision / Recommendation To The Superintendent Or Administrator:
Law Enforcement agencies may request to interview.  Detainee is aware of his legal right to refuse to speak to individuals without legal representation.

Appeal Board's Signatures / Dates:
_X. Carras_ _____    _J. Mueller_  09/21/07

Date Detainee Rec.'d the Appl. Bd.'s Response: 9/25/07  Detainee Signature: _Don Campbell_

GRIEVANCE CODE(S): (____) (____) (____) (____)

(WHITE COPY – PROG. SERV.)    (YELLOW COPY – C.R.W.)    (PINK COPY – DETAINEE)    (GOLDENROD COPY – DIVISION/SUPT. OFFICE)

United States District Court
Northern District of Illinois

Don Campbell )            Case No:
         Plaintiff )
v.s. )                    Judge:
Judge Catherine Haberkorn, Et al. )

         Defendants )

Notice of Filing And Proof of Service

Att: Michael Dobbins, Clerk, 219 S. Dearborn St Chicago, Il 60604

Enclosed Please Find the Remainder of the
Short Appendix, To the Above Entitled Lawsuit.
I have mailed in the 25 page Lawsuit /w/
Attached Informa Pauperis Application And
Six month trust account statement In
Envelope 1. on November 5th 2007.
And I am mailing this Envelope 2 on
November 5, 2007  The Claims are Imminent
Danger Claims.

                20070033595
Don Campbell, Cook County Jail P.O. Box 089002 Chicago, Il 60608